583 F.2d 1048
 6 O.S.H. Cas.(BNA) 1914, 1978 O.S.H.D. (CCH) P 23,030
NATIONAL INDUSTRIAL CONSTRUCTORS, INC., Petitioner,
v.
OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, Respondent,
Ray Marshall, Secretary of Labor, Co-Respondent.
 No. 77-1834.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 13, 1978.
Decided Sept. 14, 1978.
 
 Gregory B. Tobin, Ogletree, Deakins, Smoak & Stewart, Atlanta, Ga., for petitioner.
 Karen E. S. Bray, Atty., U. S. Dept. of Labor, Washington, D. C., for respondent; Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Allen H. Feldman, Acting Counsel for Appellate Litigation, Dennis K. Kade, Asst. Counsel for Appellate Litigation, Scott H. Strickler, Asst. Counsel for Regional Litigation, U. S. Dept. of Labor, Washington, D. C., and Henry C. Mahlman, Associate Regional Sol., Denver, Colo., on brief.
 Before GIBSON, Chief Judge, and LAY and HEANEY, Circuit Judges.
 HEANEY, Circuit Judge.
 
 
 1
 National Industrial Constructors, Inc., petitions this Court[1] for review of an Administrative Law Judge's decision holding that National had violated certain regulations promulgated under the Occupational Safety and Health Act of 1970 (OSHA). The decision became a final agency order when the Occupational Safety and Health Review Commission (the Commission) declined to review it.[2] We affirm.
 
 
 2
 In early July, 1976, National, a construction company, was engaged in the construction of the Gerald Gentlemen Station (the Project), a fossil fuel power plant. On July 6, 1976, during construction, Gerald Benton, a National ironworker, fell fifty-four feet and suffered serious injuries. The next day, an OSHA compliance officer visited the Project to investigate the accident. On August 3, 1976, two citations were issued in which National was accused of violating several OSHA regulations. National filed a timely notice contesting the citations.
 
 
 3
 On October 1, 1976, the Secretary of Labor filed a complaint with the Commission essentially setting forth the allegations contained in the citations. After an evidentiary hearing, the Administrative Law Judge filed his decision and order. He held that National had violated 29 C.F.R. § 1926.450(a)(1) (1977), a serious violation, and 29 C.F.R. § 1926.21(b)(2) (1977), a nonserious violation.[3]
 
 
 4
 In this appeal, National contends that: (1) 29 C.F.R. § 1926[4] was not validly promulgated by the Secretary of Labor; (2) the Secretary's complaint should have been dismissed because under Commission Rule 33(a)(1), 29 C.F.R. § 2200.33(a)(1) (1977), it was not timely filed; (3) 29 C.F.R. § 1926.21(b)(2) is unenforceably vague; and (4) there is insubstantial evidence in the record to support the violations.[5]
 
 I.
 PROMULGATION OF 29 C.F.R. § 1926
 A.
 
 5
 Under Section 6 of OSHA, 29 U.S.C. § 655 (1970), the Secretary of Labor is authorized to promulgate standards[6] to further the objectives of OSHA. Section 6(b), 29 U.S.C. § 655(b) (1970), enumerates the procedures with which the Secretary must comply when promulgating new standards. Under Section 6(a), 29 U.S.C. § 655(a) (1970), however, the Secretary may avoid these procedures as well as the notice and publication requirements of the Administrative Procedure Act (APA), See 5 U.S.C. § 553 (1976), by adopting, as an OSHA Standard, "any established Federal standard." Established federal standards are defined in OSHA as "any operative occupational safety and health standard established by any agency of the United States and presently in effect." 29 U.S.C. § 652(10) (1970). Because OSHA became effective April 28, 1971, any federal safety and health regulation in effect on that date could be summarily adopted by the Secretary and included in OSHA's regulation under Section 6(a) as an "established Federal standard."
 
 
 6
 Acting under Section 6(a) of OSHA, the Secretary adopted, as OSHA regulations, 29 C.F.R. § 1926 (1977), See supra note 5, which had been promulgated pursuant to Section 107 of the Construction Safety Act, 40 U.S.C. § 333 (1970). National argues that the Construction Safety Act regulations had not been validly promulgated and were not "established Federal standards." Thus, they could not have been adopted by the Secretary as OSHA regulations under Section 6(a).
 
 
 7
 Section 107 of the Construction Safety Act requires the Secretary of Labor, in promulgating regulations, to comply with the requirements of 5 U.S.C. § 553 (1976) of the APA. Section 553 requires, Inter alia, that proposed regulations be published in the Federal Register for thirty days prior to the date upon which they become effective unless the agency finds good cause justifying a shortened publication period.
 
 
 8
 The Construction Safety Act regulations were published in the Federal Register for seven and ten days prior to their effective date rather than for thirty days as specified in 5 U.S.C. § 553 (1976) of the APA. See 36 Fed.Reg. 7340 (1971), Infra note 7. The Secretary included a statement of "good cause" in support of his decision to expedite the effective date of the regulations.[7]
 
 
 9
 National points out that the Construction Safety Act regulations became effective on April 27, 1971, one day before OSHA's effective date. Had the Secretary not expedited publication of these regulations, they would not have been existing federal standards on April 28, 1971, the date OSHA became effective, and the Secretary, in promulgating the regulations as OSHA standards, would have had to comply with the more detailed promulgation requirements of Section 6(b) of OSHA. National implies that the Secretary's desire to promulgate summarily the Construction Safety Act regulations as OSHA standards was the Secretary's principal reason for shortening the period of publication in the Federal Register. National argues that the Secretary incorrectly categorized the Construction Safety Act regulations as appropriate for expedition under the good cause exception in 5 U.S.C. § 553(d)(2) (1976). Thus, National argues, because the Secretary did not publish the Construction Safety Act regulations in the Federal Register for thirty days as the APA requires and erroneously relied upon the good cause exception, the regulations were not "existing Federal standards" and could not have been summarily adopted by the Secretary as OSHA regulations under Section 6(a).
 
 B.
 
 10
 Before addressing National's claim that 29 C.F.R. § 1926 was invalidly promulgated, we must initially decide whether a party may raise in this enforcement proceeding the Secretary's failure to comply procedurally with the publication requirements of 5 U.S.C. § 553 (1976) of the APA.[8]
 
 
 11
 Under Section 6(f) of OSHA, 29 U.S.C. § 655(f) (1970), the statute provides for pre-enforcement review of standards promulgated by the Secretary of Labor. This provision permits a party, who may be adversely affected by an OSHA standard, to challenge its validity in a United States court of appeals within sixty days from the time the standard becomes effective.
 
 
 12
 National did not proceed under Section 6(f). Rather, it raised the manner in which 29 C.F.R. § 1926 had been promulgated as a defense in the enforcement proceeding instituted by the Commission.
 
 
 13
 The Agency, relying upon Daniel Construction Co., OSHRC Docket Nos. 7734 & 7672 (Feb. 10, 1977), (1976-1977) Occup.Saf. & Health Dec. (CCH) P 21,521, in which the Commission sustained the Secretary's reliance on "good cause" in support of his decision to publish the Safety Act regulations in the Federal Register for less than thirty days, rejected National's promulgation claim. National then filed this action under Section 11(a) of OSHA, 29 U.S.C. § 660(a) (1970), to review the Agency's decision. In this appeal, National renewed its claim that the regulations had been invalidly promulgated.
 
 
 14
 We must decide whether procedural claims of invalidity may be raised in an enforcement proceeding before the Commission from which appeals are taken to this Court under Section 11(a) of OSHA, or whether such claims must exclusively be made in this Court under Section 6(f) of OSHA within sixty days from the time the regulations become effective.
 
 
 15
 Congress has discussed the scope intended for pre-enforcement review under Section 6(f).
 
 
 16
 While (Section 6(f)) would be the exclusive method for obtaining pre-enforcement judicial review of a standard, the provision does not foreclose an employer from challenging the validity of a standard during an enforcement proceeding.
 
 
 17
 S.Rep.No.91-1282, 91st Cong., 2d Sess. Reprinted in (1970) U.S.Code Cong. & Admin.News, pp. 5177, 5184.
 
 
 18
 It seems apparent that, at least for substantive attacks, Congress did not intend pre-enforcement review under Section 6(f) to be the exclusive method for challenging the validity of a regulation. At least one court of appeals has held that the substantive validity of a regulation may be raised in an enforcement proceeding under Section 11(a), as well as under Section 6(f) of OSHA. See Atlantic & Gulf Stevedores v. OSHRC, 534 F.2d 541, 549-550 (3d Cir. 1976). See also Arkansas-Best Freight Systems, Inc. v. OSHRC, 529 F.2d 649, 652-653 (8th Cir. 1976).
 
 
 19
 When Congress has provided more than one avenue of judicial review, an employer's right to challenge on substantive grounds an allegedly arbitrary or unreasonable regulation should not be limited to a period prior to enforcement immediately following the regulation's effective date.
 
 
 20
 Because the filing of a pre-enforcement petition to review will not ordinarily operate as a stay of the standard, See § 6(f), 29 U.S.C. § 655(f), enforcement proceedings may commence before even an initial determination of validity has been made. Unless the Commission is authorized to consider defenses of invalidity, it will be reduced to rubber-stamping possibly invalid citations, and employers will for an interim period be deprived of any remedy for sanctions imposed contrary to law.
 
 
 21
 Moreover, it may become evident that a particular safety standard is economically or technically infeasible, or otherwise unreasonable, only after employers have made good faith efforts to comply. These problems may manifest themselves well after the 60-day period for pre-enforcement review has expired.
 
 
 22
 Atlantic & Gulf Stevedores v. OSHRC, supra 534 F.2d at 549-550.
 
 
 23
 Procedural attacks, on the other hand, implicate different interests. An employer's interest in invalidating an otherwise reasonable regulation solely because the Secretary has failed to comply with the APA's procedural requirements is, in our view, distinguishable from attacks on the reasonableness or feasibility of the regulation. While the unreasonableness of a regulation may only become apparent after a period during which an employer has made a good faith effort to comply, procedural irregularities need not await the test of time and can be raised immediately. The agency's interest in finality, coupled with the burden of continuous procedural challenges raised whenever an agency attempts to enforce a regulation, dictates against providing a perpetual forum in which the Secretary's procedural irregularities may be raised. Were there no limitation upon the time within which procedural attacks could be made, the resulting uncertainty might inhibit employers, otherwise able and willing, from complying with a regulation.
 
 
 24
 While no court of appeals has specifically decided this question, the Third Circuit has recognized the distinction between substantive and procedural claims of invalidity. See Atlantic & Gulf Stevedores v. OSHRC, supra 534 F.2d at 551-552. There, the Court intimated that, in an enforcement proceeding, an employer may not defend solely on the ground that the Secretary has ignored certain procedural requirements. Rather, it must produce evidence why the regulation under attack is arbitrary, capricious or unreasonable. Id.
 
 
 25
 We think there is merit to the distinction between substantive and procedural claims of invalidity and hold that a challenge to the validity of an OSHA regulation, based solely upon the Secretary's failure to comply with the procedural requirements of the APA, OSHA, or any other applicable statute, may only be raised in a pre-enforcement proceeding instituted pursuant to Section 6(f) of OSHA within sixty days from the time the regulation becomes effective. Such attacks may not be raised in an enforcement proceeding. Sixty days, in our view, provides a reasonable period during which procedural challenges can be raised. National is, therefore, barred from raising the procedural invalidity of 29 C.F.R. § 1926 in this action.[9]
 
 II.
 
 26
 National next complains that the Secretary's complaint ought to have been dismissed because it was not filed within the twenty-day time limit prescribed in Commission Rule 33(a)(1), 29 C.F.R. § 2200.33(a)(1) (1977).[10]
 
 
 27
 The Commission concedes that its complaint was filed forty-two days after National's notice of contest was received, twenty-two days late. The Commission argues, however, that under Commission Rule 38, 29 C.F.R. § 2200.38 (1977),[11] the Administrative Law Judge has discretion to excuse a failure to comply with the Commission's rules.
 
 
 28
 Despite a lack of unanimity among the OSHA Commissioners, a majority has held that an untimely complaint should be dismissed only when there has been prejudice to the employer. See Secretary of Labor v. Jensen Construction Co. of Oklahoma, OSHRC Docket Nos. 12940, 12947, 13196 (June 6, 1977), (1977) 5 Occup.Saf. & Health Cas. 1780; Secretary of Labor v. Rollins Outdoor Advertising, Inc., OSHRC Docket No. 12528 (Feb. 22, 1977), (1977) 5 Occup.Saf. & Health Cas. 1041. We agree with the majority. A review of the record convinces us that National has failed to allege sufficient facts in support of its claim of prejudice in this action. Thus, we are satisfied the Administrative Law Judge did not abuse its discretion under Commission Rule 38 in refusing to dismiss the complaint.
 
 III.
 
 29
 National also argues that 29 C.F.R. § 1926.21(b)(2) (1977), which it was held to have violated, provides inadequate notice to employers of the conduct required and is unenforceably vague. 29 C.F.R. § 1926.21(b)(2) provides:
 
 
 30
 The employer shall instruct each employee in the recognition and avoidance of unsafe conditions and the regulations applicable to his work environment to control or eliminate any hazards or other exposure to illness or injury.
 
 
 31
 In determining whether an administrative regulation provides adequate notice, courts have inquired whether an employer familiar with the circumstances of the industry could reasonably be expected to have had adequate warning of the conduct required by the regulation. See Hoffman Construction Co. v. OSHRC, 546 F.2d 281, 283 (9th Cir. 1976); Cape & Vinyard Division v. OSHRC, 512 F.2d 1148, 1152 (1st Cir. 1975).
 
 
 32
 Recently, a majority of the Commission has sustained the validity of 29 C.F.R. § 1926.21(b)(2) (1977) against a vagueness attack. See Secretary of Labor v. Henkels & McCoy, Inc., OSHRC Docket No. 8842 (Aug. 3, 1976), (1976) 4 Occup.Saf. & Health Cas. 1502. There, the Commission held that the provision, while broad, is clear and requires: "(1) instruction in safety measures and applicable regulations, and (2) instructions on how employees may recognize and thereby avoid unsafe conditions." Id. at 9-10.
 
 
 33
 Regulations so vague that people of common intelligence must guess at their meaning and application do not provide adequate notice. We agree with the Commission, however, that 29 C.F.R. § 1926.21(b)(2) (1977) sufficiently warns employers of the conduct required and is not impermissibly vague. The regulation, at a minimum, requires that an employer apprise its employees of applicable regulations and issue general instructions on how employees may recognize and avoid dangerous conditions.[12]
 
 IV.
 
 34
 Finally, National argues that there is insubstantial evidence in the record to support the violations. The scope of our review in OSHA cases is provided in Section 11(a) of the Act, 29 U.S.C. § 660(a) (1970), which provides in part:
 
 
 35
 The findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive.
 
 
 36
 See Beall Construction Co. v. OSHRC, 507 F.2d 1041, 1046 (8th Cir. 1974). See generally Universal Camera Corp. v. NLRB, 340 U.S. 474, 479-491, 71 S.Ct. 456, 95 L.Ed. 456 (1951).
 
 A.
 29 C.F.R § 1926.450(a)(1)
 29 C.F.R § 1926.450(a)(1) (1977) provides:
 
 37
 Except where either permanent or temporary stairways or suitable ramps or runways are provided, ladders described in this subpart shall be used to give safe access to all elevations.
 
 
 38
 The Commission argues that National failed to provide safe access to the area on elevation 3263 where Benton was working on July 6, 1976, the day of the accident and that the diagonal beams used by the employees provided the only access. National argues that there were two safe ways employees could have gotten to the work area[13] and that the regulation only requires an employer to furnish access to elevations, not all points on an elevation.
 
 
 39
 The Administrative Law Judge, noting the testimony was conflicting, found the Commission's witnesses to be more convincing than National's and held that National had violated 29 C.F.R. § 1926.450(a)(1) (1977). We are satisfied that the Judge's conclusion has substantial evidentiary support in the record as a whole.
 
 
 40
 Randy Craig, testifying for the Commission, stated that there were no temporary or permanent stairways, walkways, or ramps on July 6 and 7 leading to his work area on elevation 3263. Employees had to climb diagonal beams which, due to heavy use by employees, had become slick. Craig conceded, during cross-examination, that there was a permanent stairway leading to elevation 3263 but there was no ramp or other means of getting to the work area. The testimony of the OSHA compliance officer who inspected the project on July 7, 1976, supports Craig's testimony.
 
 
 41
 We reject National's argument that 29 C.F.R § 1926.450(a)(1) requires access only to elevations rather than all work areas on an elevation. Regulations should be given a reasonable, commonsense interpretation. If the standard only required access to an elevation but did not compel employers to provide a reasonably safe way of getting from that point to a particular work area on an elevation, it would be rendered useless.
 
 B.
 29 C.F.R § 1926.21(b)(2)
 
 42
 As indicated above, 29 C.F.R § 1926.21(b)(2) requires an employer to "instruct each employee in the recognition and avoidance of unsafe conditions and the regulations applicable to his work environment to control or eliminate any hazards or other exposure to illness or injury."
 
 
 43
 National argues that the record does not support a finding of a violation and clearly shows National had a more than adequate safety program including orientation and periodic safety meetings.
 
 
 44
 The Administrative Law Judge found that National's employees were climbing diagonal beams to gain access to their work area. He also found that a National supervisor was aware of this activity, and not only failed to instruct the employees about the hazards associated with it but instructed the injured employee, who was experiencing difficulty climbing the diagonal, to rest before continuing. The judge held that 29 C.F.R. § 1926.21(b)(2) (1977) requires more than a general safety program. It requires supervisory personnel when they observe activity that is hazardous or violative of a regulation to instruct workers accordingly.
 
 
 45
 Our review of the record satisfies us that the Administrative Law Judge's factual findings are substantially supported. National's safety engineer testified that during the orientation program, as well as the weekly safety meetings, employees were instructed about proper means of access to an elevated area and were told not to climb diagonal beams. Randy Craig, a National ironworker, with whom Benton, the injured worker, was working on the day of the accident, testified that he was not specifically advised about climbing the diagonal beams to his work area. Craig also testified, as the Administrative Law Judge found, that a National foreman knew of the climbing activity but neglected to instruct employees of the hazards associated with it.
 
 
 46
 While there appears to be some conflicting testimony over whether employees were informed not to climb diagonal beams, the record is clear that a National foreman was aware of the activity but did not instruct employees to cease. We agree with the Administrative Law Judge that 29 C.F.R § 1926.21(b)(2) (1977) requires more than a general safety program. Reasonably applied, the standard requires supervisory personnel to advise employees, especially new employees, of the hazards associated with actual dangerous conduct in which they are presently engaging. See Secretary of Labor v. Sawnee Electric Membership Corp., OSHRC Docket No. 10277 (Feb. 23, 1977), (1977) 5 Occup.Saf. & Health Cas. 1059.
 
 
 47
 Affirmed.
 
 
 
 [1]
 Jurisdiction is based upon 29 U.S.C. § 660(a) (1970)
 
 
 [2]
 See 29 U.S.C. § 661(i) (1970), which provides in part:
 A hearing examiner * * * shall hear, and make a determination upon, any proceeding instituted before the Commission * * *. The report of the hearing examiner shall become the final order of the Commission within thirty days * * * unless within such period any Commission member has directed that such report shall be reviewed by the Commission.
 
 
 [3]
 The Administrative Law Judge dismissed the Secretary's allegation that National had violated 29 C.F.R. § 1926.251(a)(3) (1977). The judge also vacated a $125 fine that had been levied for the nonserious violations. The parties do not raise these issues in this appeal
 
 
 [4]
 According to the briefs, 29 C.F.R. § 1926 was formerly designated 29 C.F.R. § 1518 (1971)
 
 
 [5]
 Before the Administrative Law Judge, National argued that OSHA, as applied in this action, violated its rights under the Fourth Amendment to the Constitution. At oral argument, National's counsel informed the Court that it had withdrawn the constitutional challenge
 
 
 [6]
 The Code of Federal Regulations, as well as OSHA, refers to standards rather than regulations. For purposes of this appeal, there does not appear to be any material difference between these terms. They will be used interchangeably in this opinion
 
 
 [7]
 The Secretary stated:
 (G)ood cause is hereby found for having these rules * * * effective within a period of less than 30 days following publication except where longer periods are specifically provided. The rules are applied only to new construction contracts which are advertised on or after the seventh day following publication of this document in the Federal Register. In the case of negotiated construction contracts, the rules shall be effective as to new contracts of this nature for which negotiations are commenced on or after 10 days following publication of this document in the Federal Register. The time lag in the procurement process, together with the time periods specified, are considered sufficient to afford affected persons reasonable time to take such action as may be necessary to comply with the rules.
 
 
 [36]
 Fed.Reg. 7340 (1971)
 The Secretary also stated that the regulations were within the "public contracts" exception to 5 U.S.C. § 553 (1976) and were exempt from its requirements. Because of our holding, we need not discuss the applicability of the public contracts exception in this context.
 
 
 [8]
 We purposely distinguish National's "procedural" attack on the validity of the regulations with a claim that the regulations are arbitrary or unreasonable, which we label "substantive."
 
 
 [9]
 In Daniel Construction Co., OSHRC Docket Nos. 7734 & 7672 (Feb. 10, 1977), (1976-1977) Occup.Saf. & Health Dec. (CCH) P 21,521, the Commission held that the Secretary's statement of good cause, See supra note 7, justified the shortened period during which the Construction Safety Act regulations were published in the Federal Register
 Were this a pre-enforcement proceeding brought under Section 6(f) of OSHA within sixty days from the time the regulations became effective, we would have great difficulty, based on the Secretary's statement of good cause, upholding his reliance on the good cause exception in support of his decision to expedite publication of these regulations.
 We note that the House Report, in explaining the rationale for permitting a shortened publication period, has stated:
 Many rules * * * may be made operative in less than 30 days because of inescapable or unavoidable limitations of time, because of the demonstrable urgency of the conditions they are designed to correct, and because the parties subject to them may during the usually protracted hearing and decision procedures anticipate the regulations.
 H.Rep.No.1980, 79th Cong., 2d Sess. (1945), Reprinted in Administrative Procedure Act, Legislative History 79th Cong. 1944-1946 at 260.
 The Senate Report states:
 The (good cause exception) * * * is not an "escape clause" which may be arbitrarily exercised but requires legitimate grounds supported in law and fact by the required finding.
 S.Rep.No.752, 79th Cong., 1st Sess. (1946), Reprinted in Administrative Procedure Act, Legislative History 79th Cong. 1944-1946 at 201.
 Similarly, the cases defining the scope of good cause have required some showing of urgency or immediacy that does not appear to have been alleged by the Secretary in the present action. See, e. g., Buckeye Cablevision, Inc. v. F. C. C., 128 U.S.App.D.C. 262, 270 n.34, 387 F.2d 220, 228 n.34 (1967); Minden Beef Co. v. Cost of Living Council, 362 F.Supp. 298, 304-305 (D.Neb.1973). We cannot ignore the Secretary's timing in this case. The Construction Safety Act regulations became effective one day prior to April 28, 1971, the effective date of OSHA. Had they been published in the Federal Register for thirty days, the Secretary could not have summarily adopted them as "existing Federal standards" under Section 6(a) of OSHA. If this were, in fact, the principal reason for shortening the publication period, it would not of itself satisfy "good cause" as the cases and Congress have defined it.
 
 
 [10]
 Under 29 U.S.C. § 661(f) (1970), the Commission is authorized "to make such rules as are necessary for the orderly transaction of its proceedings." Pursuant to its authority under § 661(f), the Commission promulgated 29 C.F.R. § 2200 (1977). 29 C.F.R. § 2200.33(a)(1) (1977) provides:
 The Secretary shall file a complaint with the Commission no later than 20 days after his receipt of notice of contest.
 
 
 [11]
 29 C.F.R. § 2200.38 (1977) provides:
 Failure to file any pleading pursuant to these rules when due, may, in the discretion of the Commission or the judge, constitute a waiver of the right to further participation in the proceedings.
 
 
 [12]
 National argues not only that the regulation provides no notice and is unenforceably vague, but that 29 C.F.R. § 1926.21(b)(2) (1977) fails to meet the definition of a standard contained in Section 3(8) of OSHA, 29 U.S.C. § 652(8) (1970), which provides:
 The term "occupational safety and health standard" means a standard which requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment.
 We are satisfied that 29 C.F.R § 1926.21(b)(2) (1977) falls within this rather broad definition.
 
 
 [13]
 National's safety engineer testified that there were two methods by which employees could safely have gotten to the area on elevation 3263 at which Gerald Benton and Randy Craig were working on July 6, 1976. First, employees could have climbed a permanent stairway in the southwest corner and then used a lifeline and pick board (a temporary ramp) to obtain access from the stairway to the work area. Second, employees could have reached elevation 3263 either by climbing the permanent stairway or by utilizing a personal hoist. Then by "cooning" (a safety belt tied around the beam), which provided lateral access, employees could have reached the work area