H. S. HOLTZE CONSTRUCTION COMPANY, Petitioner,

v.

F. Ray MARSHALL, Secretary of Labor, United States Department of Labor, and the Occupational Safety and Health Review Commission, Respondent.

No. 79–1957.

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1980.

Decided Aug. 8, 1980.

I. John Rossi, Des Moines, Iowa, for petitioner.

John R. Bradley, Atty., U. S. Dept. of Labor, Washington, D. C., argued, Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol., Washington, D. C., on brief, for Occupational Safety and Health.

Allen H. Feldman, Counsel, and John A. Bryson, Acting Asst. Counsel, Washington, D. C., for App. Litigation.

Before ROSS, Circuit Judge, GIBSON, Senior Circuit Judge, and HANSON, District Judge.*

ROSS, Circuit Judge.

This action arises under the Occupational Safety and Health Act of 1970 (Act), 29 U.S.C. § 651 *et seq.* Petitioner, H. S.

Holtze Construction Company (Holtze), is a contractor who at all times relevant to this action was engaged in the construction of three-story buildings in an apartment complex. On October 30, and 31, 1975, a compliance officer of the Occupational Safety and Health Administration inspected this worksite and noted three Holtze employees working on a third floor level of one of the buildings. They were assembling wall sections which were to be erected as the exterior walls for the third floor. The building measured 171 feet by 48 feet and the third floor level was 19½ feet above the ground.

The employees assembled the wall sections by nailing two by four studs into plates and then stapling celotex and plywood sheets to the studs to provide for exterior coverage of each section. All the materials needed in constructing the wall sections were precut on the ground and raised by a forklift to the third floor for assembling. After the wall sections were assembled, they were pushed out to the edge of the floor, raised into place and nailed into the floor. Two by fours were then angled from these exterior walls to the interior floor to provide temporary bracing for the wall. Before any further work was done on this level, the exterior walls were fully secured by enough interior walls for adequate bracing.

At the time of the inspection, the edge of the floor was unguarded in the area in which the employees worked. The employees would approach the edge of the floor when they were removing lumber from the forklift, nailing the base of the exterior wall sections to the studding, and erecting each wall section. On the basis that Holtze failed to provide fall protection for its employees working on opensided floors, Holtze received a citation alleging that it had committed a serious violation of section 5(a)(2) of the Act, 29 U.S.C. § 654(a)(2) for failure to comply with 29 C.F.R. § 1926.500(d)(1).[1]

---

* The Honorable WILLIAM C. HANSON, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

1.  29 U.S.C.A. § 654(a)(2) provides:

(a) Each employer—

(2) shall comply with occupational safety and health standards promulgated under this chapter.

29 U.S.C.A. § 666(j) provides:

[A] serious violation shall be deemed to exist * * * if there is substantial probability

Because Holtze contested the citation, a hearing was held on March 16, 1976, before the Occupational Safety and Health Review Commission's Administrative Law Judge (ALJ). For issues relevant to this appeal, the judge vacated subitem (a) which read "(Third level floor, building B–2, Southeast corner) Open-sided floor 19 feet 6 inches from ground." The ALJ accepted Holtze's argument that the wall, when erected, provided protection equivalent to that of the standard railing, finding that:

> The work involved in the building of temporary guardrails in obedience to 29 CFR 1926.500(d)(1), and the subsequent removal of such rails, would, by itself, take more time than the assembling and erection of the exterior walls, thereby increasing the total time spent by respondent's employees at or near the floor edges and resulting in an increase, rather than a decrease, in the exposure to falls.

The Secretary of Labor then petitioned for discretionary review by the full Commission and such review was directed on November 12, 1976. The Commission reinstated the violation under subitem (a) and found that petitioner had neither established a "greater hazard" defense nor a defense of impossibility. There was a dissenting opinion. Petitioner now appeals this determination.

The test by which we view the Commission's findings of fact and inferences is whether such findings were based upon substantial evidence. *Danco Construction Company v. OSHRC*, 586 F.2d 1243, 1246 (8th Cir. 1978). After a thorough review of the record, we cannot say that substantial evidence supports the Commission's determination.

The Commission would require petitioner to build a guardrail along the 171-foot edge of a building under construction although the reason for the employees working on this third level is to erect an exterior wall which will serve as the functional equivalent of the standard guardrail. The Commission would penalize petitioner for failing to provide this guardrail despite the evidence presented, as pointed out by the dissent, that 1) the wall will take less time to build than the time required to construct and take down the guardrail; 2) the employees who put up and disassemble the guardrail will also be exposed to fall hazards—hazards for which other additional safety devices must be devised or erected; and 3) the erected guardrail would provide meager protection, since it cannot be braced from the third floor interior without preventing construction of the wall and, lacking such bracing, will be able to withstand little outward force.

While we are mindful of the broad scope and remedial purposes of the Occupational Safety and Health Review Act, we are of the opinion that some modicum of reasonableness and common sense is implied. There is a point at which the impracticality of the requirement voids its effectiveness and that point has been reached when to erect an entire wall, a project said to take approximately two hours, petitioner must

that death or serious physical harm could result * * * unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

29 C.F.R. § 1926.500(d)(1) requires:

Every open-sided floor or platform 6 feet or more above adjacent floor or ground level shall be guarded by a standard railing, or the equivalent, * * *

Holtze actually received two citations, the first of which was basically admitted and conditions abated. Citation number two consisted of seven subitems constituting a violation of 29 C.F.R. § 1926.500(d)(1). Before this appeal, the violations in subitems (c)–(g) were vacated by the Administrative Law Judge who found a violation only of subitem (b). He assessed a $100 penalty. The Occupational Safety and Health Review Commission approved the Administrative Law Judge's decision with respect to all subitems except for subitem (a). On review the Commission found this item to have been violated as well and assessed an additional penalty of $250. Only the Commission's finding on subitem (a) is contested in this appeal.

begin an endless spiral of tasks consisting of abatement activities which necessitate further protective devices, i. e., guardrail to erect wall, scaffold to erect guardrail, safety devices to erect scaffold, etc. We agree with the dissent that some demarcation line must be drawn between that which is genuinely aimed at the promotion of safety and health and that which, while directed at such aims, is so imprudent as to be unreasonable.

On appeal, the Secretary argues that in order to plead the "greater hazard" defense, petitioner must show: 1) that the hazards of compliance are greater than the hazards of noncompliance, 2) that alternative means of protecting employees are unavailable; and 3) that a variance application under section 6(d) of the Act would be inappropriate. Such criteria and proof as structured by the Commission have been recently recognized by the Third and Ninth Circuits. *See Noblecraft Industries, Inc. v. Secretary of Labor*, 614 F.2d 199 (9th Cir. 1980) and *General Electrical Co. v. Secretary of Labor*, 576 F.2d 558 (3rd Cir. 1978) (employer given time to apply for a variance). However, for reasons discussed below, this criteria is not applicable to the present case.

Unlike the cases cited by the Commission, we are not talking about a permanent condition of unguarded radial saw blade sides or a hazard near which employees constantly perform work basically unrelated to any abatement of the hazard involved. The period of time in question in this case is actually only the period of abatement as once the floor was completed, the walls were erected. No other work commenced until the unguarded edges were eliminated. Holtze cannot be said to have been noncompliant in the sense that it chose to ignore the dangers inherent in an unguarded edge or chose to let its employees work on the third level without attempting to abate this hazard. Rather, Holtze was eliminating the hazard itself by erecting a wall—a functional equivalent that when built would be better than a guardrail to protect against unguarded edges.

As for alternative means of protection *while* the employees are constructing and erecting the wall, the testimony revealed that the use of lifelines would be "very impractical" as the employees were traveling a 70 foot distance to construct a wall section and a 70 foot line on them would not protect in the event of a 19 foot fall. To tie safety belts, scaffolds or stanchions would have to be erected which in turn would expose employees to further fall hazards. While an employer who is in the process of abatement may not *needlessly* expose its employees to the very hazard against which the standard is intended to protect, *Floyd S. Pike Electrical Contractor, Inc.*, 77 OSAHRC 26/B11, 5 BNA OSHC 1088, 1977–78 CCH OSHD ¶ 21,584 (No. 12398, 1977), *aff'd*, 576 F.2d 72, 76 (5th Cir. 1978), a reasonable interpretation of the purpose of the Act is necessary.

Additionally, a variance application is here inappropriate, as we are discussing a situation of employees working on a third floor level for the very purpose of eliminating unguarded edges. Petitioner does not maintain or desire that the edge should remain unguarded.[2] The real question is only whether or not while the hazard is being eliminated, are the employees adequately protected? We believe they were

---

**2.** We need not here decide the propriety of applying the criteria established by the Commission for a "greater hazard" defense. We shall note, however, that the variance requirement was not entrenched at the time of petitioner's hearing in March of 1976. It was not until *Secretary v. Russ Kaller, Inc., T/A Surfa Shield*, 76 OSAHRC 130/F10, 4 BNA OSHC 1758, 1976–77 CCH OSHD ¶ 21,152 (No. 11171, 1976) on Oct. 7, 1976, that OSHRC spelled out the specific requirements for the greater hazard defense. The circuit court cases cited for their approval of these requirements are dated 1978 and 1980. The only requirement of proof necessary for the greater hazard defense in *Secretary v. Industrial Steel Erectors, Inc.*, 1974, 60 OSAHRC 154, 1 BNA OSHC 1497, was that the safety or health of employees would be endangered rather than protected by compliance. If the additional variance regulations are applied here, when the case originated in 1975, petitioner might well complain that the rules were changed to its prejudice in mid-course. *See Irwin Steel Erectors, Inc. v. OSAHRC*, 574 F.2d 222, 223–24 (5th Cir. 1978).

more adequately protected than they would have been by erecting and then removing a separate guardrail. Accordingly we reverse the Commission's determination in regard to subitem (a) of the citation and find that subitem (a) should be vacated.

■ Petitioner also contests the second citation on the basis of an erroneous reference within the cited standard and on the basis that the Commission's direction for review was not timely made. We are in accord with the Commission's decision that the erroneous reference in the citation was due to a typographical error and did not render the standard so ambiguous as to mislead or misinform petitioner. Holtze was directed to the proper subsection of the proper section and can reasonably be said to have had adequate warning of the conduct required by the regulations. *See National Industrial Constructors, Inc. v. OSHRC and Marshall*, 583 F.2d 1048, 1054 (8th Cir. 1978).

■ We are also in agreement with the Commission's determination that its direction for review was timely made. Section 12(j) of the Act, 29 U.S.C.A. § 666(i) states:

> (i) A hearing examiner appointed by the Commission shall hear, and make a determination upon, any proceeding instituted before the Commission and any motion in connection therewith, assigned to such hearing examiner by the Chairman of the Commission, and shall make a report of any such determination which constitutes his final disposition of the proceedings. The report of the hearing examiner shall become the final order of the Commission *within thirty days after such report by the hearing examiner,* unless within such period any Commission member has directed that such report shall be reviewed by the Commission.

(Emphasis added.)

Pursuant to its authority in 29 U.S.C.A. § 661(f) to "make such rules as are necessary for the orderly transaction of its proceedings," the Commission created a procedure whereby a judge's decision is released to the parties but not officially filed with the Commission for an additional 21 days:

> (a) Upon completion of any proceeding, the Judge shall prepare a decision. When a hearing is held the decision shall comply with 5 U.S.C. 557. Copies of the decision shall be mailed to all parties. Thereafter, the Judge shall file with the Executive Secretary a report consisting of his decision, the record in support thereof, and any petitions for discretionary review of his decision, or statements in opposition to such petitions, that may be filed in accordance with § 2200.91. The Judge shall file his report on the day following the close of the period for filing petitions for discretionary review, or statements in opposition to such petitions, *but no later than the twenty-first day following the date of the mailing of the decision to the parties.*
>
> (b)(1) Promptly upon receipt of the Judge's report, the Executive Secretary shall docket the case and notify all parties of that fact. The date of docketing shall be the date that the Judge's report is made for purposes of section 12(j) of the Act (29 U.S.C. 661). \* \* \*

29 C.F.R. § 2200.90 (emphasis added).

The respondent explains that this time period provides the parties an opportunity to study the decision and prepare petitions for discretionary review, and allows the Commission's staff to prepare review memoranda for submission to the Commission. However, until the decision is officially filed and docketed, it is not submitted for consideration to the Commission members and may be recalled by the Administrative Law Judge.

The judge's decision in this case was released on October 1, filed October 21, 1976, and direction for review entered on November 12. The objective of this regulation is to provide a date certain following the release of the decision from which the statutory period can run. Under these circumstances we believe that the application of this regulation is reasonable, and we cannot say that the regulation is invalid nor that the direction for review by the Commission was untimely made.

**154**

Therefore, while we believe that the direction for review was timely filed and that the petitioner had adequate notice and warning of the regulations and alleged violations, we must reverse the decision of the Review Commission in regard to subitem (a) of the second citation. The balance of the decision is affirmed.