No. 95-2779

DCS Sanitation Management,          *
Inc.;                               *
                                    *
            Petitioner;             *
                                    *
        v.                          *  On Petition for Review of an
                                    *  Order of the Occupational
Occupational Safety and             *  Safety and Health Review
Health Review Commission;  *  Commission.
Robert B. Reich, Secretary          *
of Labor, United States             *
Department of Labor;                *
                                    *
            Respondents.    *

Submitted:  February 14, 1996

Filed:  May 6, 1996

Before WOLLMAN, HEANEY, and BRIGHT, Circuit Judges.

HEANEY, Circuit Judge.

     DCS Sanitation Management, Inc. (DCS) appeals the final decision of
the Occupational Safety and Health Review Commission (Commission) affirming
three citations for willful violation of federal safety regulations.  We
affirm.

BACKGROUND

     In April 1993, Salvador Hernandez was killed when he became caught
in a loin saddle table that he was cleaning at the IBP, Inc. meat-packing
facility in Madison, Nebraska.  Hernandez was an employee of DCS, a
contract cleaner at the IBP plant.  The loin

saddle table, which was in operation while it was being cleaned, struck Hernandez in the head and killed him. The table had not been isolated from its power source, "locked out," as is required by federal regulations. In response to the accident, the Occupational Safety and Health Administration (OSHA) investigated the working conditions at the Madison plant.

During the investigation, OSHA Compliance Officer Frank Winingham visited the plant and took statements from several employees. When interviewing Spanish-speaking employees, a DCS supervisor acted as interpreter. Because he was suspect of the translations given by the supervisor, Winingham contacted DCS management and requested that the employees be made available to him again at an outside location. On May 3, 1993, the DCS regional manager and national operations manager brought six individuals to a hotel for interviews with Winingham. This time Winingham brought his own professional translator. The translator interpreted Winingham's questions into Spanish, interpreted the employees' responses into English, which Winingham then wrote down, and then translated what Winingham had written back into Spanish for the employees to verify.

At the conclusion of the investigation, DCS was cited for five willful violations of OSHA regulations regarding lockout procedures. DCS appealed the decision to an Administrative Law Judge. At the hearing, the Secretary of Labor's evidence included the six written employee statements prepared by Winingham. DCS objected to the statements as hearsay, but the objection was overruled. The ALJ affirmed three of the citations: 1) willful failure to train employees in lockout procedures; 2) willful failure to follow lockout procedures; and 3) willful failure to issue lockout equipment. The ALJ assessed DCS a $70,000 penalty for each affirmed citation. The Commission denied DCS's petition for discretionary review, and the ALJ's decision became a final

order of the Commission on May 15, 1995.  <u>See</u> 29 U.S.C. § 661(j) (1994).
DCS now appeals that decision.

## ANALYSIS

DCS appeals the decision on two grounds:  1) the written statements
were erroneously admitted into evidence, resulting in prejudice to the
appellant; and 2) the citations for willful violation of federal
regulations are not supported by substantial evidence.  We address each
point.

## I.  Hearsay

DCS contends that the written statements taken by Investigator
Winingham should have been excluded from evidence because they contain
three different levels of impermissible hearsay:  1) the initial employee
statements, 2) the interpreter's translation of those statements into
English, and 3) the written recording of that translation.  The Federal
Rules of Evidence are applicable in Review Commission hearings, OSHRC R.
Pro. 2200.71 (1992), and therefore, govern our analysis.

### A.  The Employee Statements

The initial issue is whether the introduction of the employees' oral
statements through Investigator Winingham constituted impermissible
hearsay.  Clearly, they fall under the general definition of hearsay:  an
out-of-court statement offered to prove the truth of the matter asserted.
Fed. R. Evid. 801 (1995).  The Secretary argues that the statements, with
the exception of the statement by Thomas Luna, fall within the carve-

3

out provided by Rule 801(d)(2)(D) for admissions of employees concerning the matters within the scope of their employment.[1]

To admit a statement under the employee admission exception, a party must establish that the statement was made by an employee of the opposing party during the existence of that employment relationship. Fed. R. Evid. 801(d)(2)(D) (1995). With the exception of Luna, each out-of-court declarant asserted that he was employed by DCS at the time of the statement. DCS argues that this foundation is insufficient. In support of its position, DCS cites a 1970 decision by this court requiring that the foundation establishing the grounds of a hearsay statement's exception must consist of something other than the statement itself, i.e., a hearsay statement cannot "bootstrap" itself into admission by asserting that it qualifies as a hearsay exception. United States v. Bensinger Co., 430 F.2d 584, 593 (8th Cir. 1970).

The Supreme Court has subsequently held, however, that the 1975 congressional enactment of the Rules of Evidence, in which Rule 104 permits courts to consider all evidence when determining admissibility, overruled this prohibition on "bootstrapping." Bourjaily v. United States, 483 U.S. 171, 177-81 (1987) (considering Rule 801(d)(2)(E) regarding co-conspirator

---

[1]With respect to the statement by Thomas Luna, which indicated that he was a former employee, the government argues that the "catch-all" hearsay exception, Rule 804(b)(5), should apply. The ALJ found that the statement was credible and admitted it into evidence. DCS Sanitation Management, Inc., OSHRC No. 93-3023, at 9 (March 17, 1995). A judge has wide discretion in determining whether an appropriate foundation has been laid for the admission of evidence. See United States v. Franks, 939 F.2d 600, 602 (8th Cir. 1991). However, the catch-all exception is used in rare and exceptional circumstances. See United States v. Collins, 66 F.3d 984 (8th Cir. 1995). Given that this statement is merely one of six statements and much of its substance is replicated by the other statements, we analyze the sufficiency of the evidence without considering this statement. Therefore, we find it unnecessary to reach the correctness of the ALJ's decision with respect to this particular statement.

4

statements).  While this court has not applied <u>Bourjaily</u> to the employee admissions context, the Ninth Circuit has held that the same <u>Bourjaily</u> logic applies to 801(d)(2)(D) as well as to 801(d)(2)(E).  <u>In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.</u>, 906 F.2d 432, 458 (9th Cir. 1990), <u>cert. denied</u>, 500 U.S. 959 (1991).  We agree.

In addition, even without considering the foundation asserted within these statements, DCS management brought these individuals to be interviewed in response to the OSHA investigator's request for employees. The logical inference from this fact is sufficient to establish the necessary foundation that the declarants were employed by DCS at the time the statements were made.  Therefore, in light of these two adequate bases of foundation, we hold that the ALJ did not abuse his discretion by admitting the statements under the Rule 801(d)(2)(D) employee admission hearsay carve-out.

### B.  Translation of the Statements

DCS next argues that even if the statements qualify as employee admissions, the translations of the employee's original statements from Spanish constitute another level of impermissible hearsay.  When presented with a similar issue involving the translation of a declarant's statement, the Second Circuit has held that "an interpreter is `no more than a language conduit' and therefore his translation [does] not create an additional level of hearsay."  <u>United States v. Koskerides</u>, 877 F.2d 1129, 1135 (2d Cir. 1989).  By comparison, the Ninth Circuit has chosen a more guarded approach under which the interpreter's biases and qualifications are examined to determine whether the translated statements can fairly be considered to be those of the speaker.  <u>See</u> <u>United States v. Nazemian</u>, 948 F.2d 522, 527 (9th Cir. 1991), <u>cert. denied</u>, 113 S. Ct. 107 (1992).

5

Under either approach, the translations in this case can be attributed directly to the declarant.  At the hearing, DCS raised no questions regarding the ability or biases of the interpreter, who was available at the hearing.  Even on appeal, the only relevant contention made by DCS is that the interpreter was paid by OSHA, hardly sufficient by itself to require a judge not to attribute the statements directly to the declarant.

DCS's real objection is that it did not have an opportunity to question the employees regarding what DCS characterizes as contradictions between the statements made at the plant and those made at the second interview.  DCS misidentifies its concerns regarding this issue of reliability as being "robbed . . . of any opportunity to question the accuracy of the translation."  DCS was not so robbed: the translator was available at the hearing for inquiry into her skill, any bias, or the accuracy of the translation.  With respect to the reliability of out-of-court statements, such concerns would exist whether the declarant made the statements in English or in Spanish.  Faced with a clear rule permitting out-of-court statements made by party employees, DCS now merely attempts to relabel its argument in terms of the accuracy of the translation.  The English translations were appropriately attributed directly to the employees.

### C.  Written Statements

Finally, DCS argues that the writings prepared by Winingham represent yet another level of inadmissible hearsay.  This argument is without merit. See Fed. R. Evid. 803(5) (recorded recollection) and 803(6) (records of regularly conducted activity).

In sum, we hold that the admission of the written recording of the translated employee statements was not error.

II.  Sufficiency of the Evidence

The next issue raised by DCS is whether there was substantial evidence to sustain the citations for willful violation of OSHA Regulations, 29 C.F.R. §§ 1910.147(c)(7)(i), 1910.147(c)(5)(i), and 1910.147(d)(3) (1993).  The finding of a willful violation will be upheld if supported by substantial evidence of the record as a whole.  29 U.S.C. § 660(a) (1994); Western Waterproofing Co. v. Marshall, 576 F.2d 139, 142 (8th Cir.), cert. denied, 439 U.S. 965 (1978).  This court has held that a violation is willfully committed if the defendant's actions demonstrate an intentional disregard of or plain indifference to the act's requirements.  Valdek Corp. v. OSHA, No. 95-2194, slip op. at 4 (8th Cir. Jan. 22, 1996).

A.  Violation of Section 1910.147(c)(7)(i):  Failure to Provide Training

Section 1910.147(c)(7)(i) requires employers to "provide training to ensure that the purpose and function of the energy control program are understood by the employees and that the knowledge and skills required for the safe application, usage, and removal of the energy controls are acquired by employees."  29 C.F.R. § 1910.147(c)(7)(i) (1993).  In support of the citation, the Secretary offered the testimony of Manuel Hernandez, brother and co-worker of the deceased, as well as the statements taken by Winingham.  Each asserted that he had not been trained in lockout procedures before the accident.  Although DCS claims that Hernandez is not credible because of his relationship to the decedent, the issue of credibility is a matter for the trier of fact who, in this case, credited the testimony.

In addition to the statements made by DCS employees, IBP employees testified that they observed numerous safety violations and informed DCS supervisors.  DCS argues that such testimony only

7

proves that the employees failed to practice the appropriate safety procedures, not that DCS did not provide adequate training.  Even if DCS were to have provided some safety instruction, if DCS supervisors encouraged employees to disregard procedures to increase efficiency, such safety instruction would be meaningless and insufficient.  See National Indus. Constructors, Inc. v. O.S.H.R.C., 583 F.2d 1048, 1056 (8th Cir. 1978) (holding that condoning violations of safety rules constitutes a violation of OSHA safety program requirement).  Thus, the testimony of the IBP employees permits a reasonable inference that DCS managers promoted a work environment that ignored and neutralized any safety training received by DCS employees.

Therefore, the testimony of DCS employees asserting the absence of training and the evidence demonstrating an indifference on the part of DCS managers to compliance with federally-required, safety procedures substantially support the Commission's decision to cite DCS for a willful violation of 29 C.F.R. § 1910.147(c)(7)(i) (1993).

B.    Violation of Section 1910.147(d)(3):    Failure to Follow Procedures.

Section 1910.147(d)(3) requires that "[a]ll energy isolating devices that are needed to control the energy to the machine or equipment shall be physically located and operated in such a manner as to isolate the machine or equipment from the energy source(s)."  29 C.F.R. § 1910.147(d)(3) (1993).  The ALJ affirmed the citation for the violation that occurred when Salvador Hernandez was killed by the unlocked loin saddle table.  In its defense, DCS argues that the violation was a result of unforeseeable employee misconduct.  "To establish the defense of unforeseeable employee misconduct, [the defendant] must prove that it had a work rule in place which implemented the standard, and that it communicated and enforced the rule."  Valdek Corp., No. 95-2194, slip op. at 4 (emphasis added).

8

As discussed above, there was substantial evidence that DCS managers permitted, if not promoted, an atmosphere that ignored safety procedures. Specifically, Manuel Hernandez testified that his supervisor showed him how to clean machines that were still operating. The written statements taken from the DCS employees asserted that it was commonplace for employees to climb over and reach into running machines. IBP managers testified that they reported their observations of employee safety violations to DCS managers, but received little assurance. Accordingly, DCS is unable to establish its defense, and the Commission's decision is affirmed.

## C. Violation of Section 1910.147(c)(5)(i): Providing Lockout Equipment.

Finally, DCS appeals the citation for a willful failure to provide lockout equipment. Although DCS offered some documentation that employees, including the decedent, were issued locks, the Secretary offered the testimony of Manuel Hernandez and the statements of Jose Hernandez and Eusebio Moreles that asserted that they were not issued locks as part of their training. This testimony provides a sufficient basis to sustain the decision of the Commission.

## CONCLUSION

For the above-stated reasons, we affirm the decision of the Commission finding that DCS willfully violated federal safety regulations.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

9