**Raymond J. DONOVAN (Successor to Ray Marshall) Secretary of Labor, Petitioner,**

v.

**ANHEUSER–BUSCH, INC., and Occupational Safety and Health Review Commission, Respondents.**

No. 80–1743.

United States Court of Appeals, Eighth Circuit.

Submitted May 19, 1981.

Decided Dec. 3, 1981.

Rehearing Denied Jan. 20, 1982.

A. Graham Allen, argued, Freeman, Richardson, Watson, Kelly & Livermore, P. A., Jacksonville, Fla., for respondent Anheuser-Busch, Inc.

Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol., for Occupational Safety and Health, Allen H. Feldman, Counsel for Appellate Litigation, Charles I. Hadden, Asst. Counsel for Appellate Litigation, Emilie N. Junge, Atty., argued, U. S.

Dept. of Labor, Washington, D. C., Bobbye D. Spears, Regional Sol., Atlanta, Ga., Tedrick A. Housh, Jr., Regional Sol., Kansas City, Mo., for Occupational Safety and Health Review Commission.

Before LAY, Chief Circuit Judge, ARNOLD, Circuit Judge, and BECKER,* Senior District Judge.

WILLIAM H. BECKER, Senior District Judge.

This is a petition by the Secretary of Labor (Secretary) for review of an order of an Administrative Law Judge (ALJ), which became a final order of the Occupational Safety and Health Review Commission (Commission) when the Commission denied discretionary review thereof. (Notice of Final Order dated June 24, 1980). The final order vacated a citation by the Secretary which charged Anheuser-Busch, Inc. (Busch) with a violation of the Occupational Safety and Health Act of 1970 (Act), 29 U.S.C. §§ 651 *et seq.*, in failing to provide guardrails or equivalent protection on the top surfaces of its "can-line" beer pasteurizers in its Jacksonville, Florida brewery, in violation of 29 C.F.R. § 1910.23(c)(1), set forth hereinafter.

### THE FACTS

Busch owns and operates a brewery in Jacksonville, Florida. [Transcript, (Tr.), 160, 169]. The equipment in this brewery includes three "bottle-line" pasteurizers and four "can-line" pasteurizers. (Tr. 9, 20–21). Only the failure to provide guardrails or equivalent protection on the "can-line" pasteurizers is the subject of this petition for review. (Tr. 9, 10, 20–21, 27).

Each "can-line" pasteurizer is approximately six feet in height, 25 to 30 feet in width and about 100 feet in length. (Tr. 25, 39, 148). Cans of beer pass through the pasteurizer where they are sprayed with hot water. (Tr. 20). Aluminum "logs"

---

* The Honorable William H. Becker, United States Senior District Judge for the Western District of Missouri, sitting by designation.

(hollow oblong separators) eight to ten feet in length, three inches in width, three inches in height and six to eight pounds in weight are used to separate different lots of cans of beer. (Tr. 60–61, 68, 102).

The top surface of each pasteurizer consists of nine longitudinal rows of stainless steel lids with 18 to 19 lids in each row. (Tr. 29, 92, 148, 172, Exhibit 5). Each lid is two feet in width and five feet in length (Tr. 29, 130, 148, 172), and is equipped with two inverted "L" shaped upright lifting handles used to raise the lid to gain access to the inside and the water "sprayheaders" of the pasteurizer. (Tr. 29, 148). When in place and undamaged, the surface of the lids is flat except for the upright handles. (Tr. 29, Exhibit 4).

Busch employees gain access to the top surface of a pasteurizer by climbing a fixed ladder or a stairway with guardrails. (Tr. 39, 90, 129). The top surface of the pasteurizer does not have any guardrails or similar protection along any part of its outer edges. (Exhibits 1, 2, 3 and 4).

The duties performed by Busch employees on the top surface of each pasteurizer are inspection by laboratory personnel of the "sprayheaders" under each lid every two weeks (Tr. 34, 48, 89, 96, 113–114), periodic repair by maintenance personnel of the "sprayheaders" under the lids when necessary (Tr. 27, 73, 126), placement by production employees of aluminum logs between the lots of cans of beer and removal thereof from the discharge end of the pasteurizer to the opposite end every shift (Tr. 59–61, 101, 124), intermittent inspection by production employees of the progress of the aluminum bars two to four times a shift as they pass through the pasteurizer (Tr. 62) and weekly, and more often in the summer, cleaning, washing and scrubbing of the pasteurizer by production employees while walking on the top surface of the pasteurizer. (Tr. 58–59, 105, 122).

After an inspection of the Jacksonville brewery in May of 1979 by a Compliance Safety and Health Officer (Compliance Officer), of the Occupational Safety and Health Administration (OSHA), Department of Labor, the Secretary issued a citation on August 15, 1979 charging Busch with a violation of the Act, 29 U.S.C. § 654(a)(2), and implementing standard, 29 C.F.R. § 1910.23(c)(1), for failure to provide guardrailings on the top surfaces of the pastuerizers. (Tr. 140, 143, 150–152). The citation states:

> The violations described in this citation are alleged to have occurred on or about the day the inspection was made unless otherwise indicated within the description given below.
>
> 29 CFR 1910.23(c)(1): Open sided floor(s) or platform(s) 4 feet or more above the adjacent floor or ground level were not guarded by standard railings (or the equivalent as specified in 29 CFR 1910.-23(e)(3)), on all open sides:
>
>> Top of pasteurizers; units 10, 20, 30, 40, 50, 60, 70 in the production area on to which employer [sic] must enter for inspection purposes on a routine predictable and scheduled basis with approximately daily exposure of employees.

By letter dated September 5, 1979, Busch contested the citation with respect to the four "can-line" pasteurizers, units 10, 20, 50 and 70, and agreed to abate the violations described in the citation with respect to the three "bottle-line" pasteurizers, units 30, 40 and 60. Thereafter, the Secretary filed a complaint before the Commission to affirm the citation as it applies to the "can-line" pasteurizers. By answer Busch denied the violations charged in respect to the "can-line" pasteurizers.

A hearing was held on January 31, 1980 before an ALJ appointed by the Commission. (OSHRC Docket No. 79–5002).

The findings of fact of the ALJ are fully accepted as far as they extend and are considered with other uncontroverted material facts of record.

## THE APPLICABLE STANDARDS

The applicable standard, 29 C.F.R. § 1910.23(c)(1), alleged in the contested part of the citation is as follows:

(c) *Protection of open-sided floors, platforms, and runways.* (1) Every open-sided floor or platform 4 feet or more above adjacent floor or ground level shall be guarded by a standard railing (or the equivalent as specified in paragraph (e)(3) of this section) on all open sides except where there is entrance to a ramp, stairway, or fixed ladder. The railing shall be provided with a toeboard wherever, beneath the open sides, (i) Persons can pass, (ii) There is moving machinery, or (iii) There is equipment with which falling materials could create a hazard.

The term "platform" is defined in 29 C.F.R. § 1910.21(a)(4) as follows:

A working space for persons, elevated above the surrounding floor or ground; such as a balcony or platform for the operation of machinery and equipment. [The phrase "open-sided floor" is not further defined.]

## THE DECISION OF THE ALJ

The ALJ in his "Decision and Order", dated May 22, 1980, vacated the citation as it applies to the tops of the "can-line" pasteurizers. The findings and reasoning of the ALJ are as follows:

### Statement Of The Case

This case involves the intermittent presence of laboratory technicians, maintenance, and production personnel on top of pasteurizers about six feet above the floor in the performance of certain duties assigned to them during the production of canned beer.

Inspections of respondent's Jacksonville, Florida, brewery on May 1, 1979 through May 7, 1979, by complainant pursuant to the Occupational Safety and Health Act of 1970, resulted in a citation for a § 5(a)(2) of the Act non-serious violation. Respondent contested a portion of that citation.

After a complaint and an answer were filed, the case was heard in Jacksonville, Florida, on January 31, 1980.

### The Charge

That top of pasteurizers, units 10, 20, 50, and 70, were open-sided floors or platforms four feet or more above adjacent floor, upon which employees entered for inspection purposes on a routine predictable and scheduled basis with approximate daily exposure to those open sides [29 C.F.R. 1910.-23(c)(1)].

### The Standard

Provides that every open-sided floor or platform four feet or more above adjacent floor or ground level shall be guarded by a standard railing [or its equivalent].

### Jurisdiction

Respondent by its answer to the complaint conceded it is engaged in a business affecting commerce.

### Issues

Whether the tops of the pasteurizers in issue are platforms within the meaning of complainant's definition of a platform (29 C.F.R. 1910.21(a)(4))?

If the tops should be construed as platforms, whether the exposure is de minimis?

### Reserved Ruling On Motion

Respondent objected to receiving evidence on any work related matters not directly connected with the inspection of spray headers as alleged in the citation. Ruling on that objection was reserved to this point in time. Respondent was not taken by surprise and was well aware of the expanded situation. Accordingly, the evidence objected to is allowed to stand of record in this case.

### Findings Of Fact

The material facts are not disputed. Each can-line pasteurizer is approximately six feet in height, 100 feet in length, and 25 to 30 feet in width. The top is essentially flat and consists of stainless steel lids [plates]. Each is five feet in length and two feet in width. They are laid out in nine parallel rows, each row containing 18 plates. Each plate is equipped with an L shaped lifting handle. Fixed ladders with guardrails are provided for ascent and descent to and from the top of each pasteurizer.

Cans are fed into one end of a pasteurizer and are discharged out the opposite end.

Aluminum logs are placed on the conveyor belt to separate beer destined for Georgia from beer destined for Florida [to indicate changes in lid type or crown changes]. As those logs are discharged, they are placed on top of the pasteurizer at the discharge end. These logs [bars] are about ten feet in length and weigh six to eight pounds. At periodic infrequent intervals an employee will ascend the top and carry the logs down the middle and place them at the discharge end. In the performance of that operation, the employee is never closer than ten feet to the perimeter[1] of the pasteurizer. Occasionally, a foreman requests an employee to ascend the top to open a lid to observe the progress of the logs so as to determine when they will reach the discharge end. Those two operations require ten minutes per day.

The tops of the pasteurizers are washed and mopped once each week. One employee is engaged in this operation for over an hour using a broom and a mop with a handle five feet in length. His exposure to the perimeter, if any, is miniscule.

Maintenance personnel may ascend the top of a pasteurizer to repair spray heads. At such time, the operation of the pasteurizer is shut down. In the performance of his work the mechanic is usually standing down inside the pasteurizer up to his hips. This kind of operation can occur once or twice a week, usually on week ends when the pasteurizers are shut down.

Among other duties, laboratory technicians check spray headers in the pasteurizers. Each can-line pasteurizer is so inspected at two weeks intervals. The operation is performed on top of the pasteurizer by two laboratory technicians. One raises each lid or plate by using a hook and the other views the spray heads and makes a record of the inspection. The several technicians testifying estimated the time engaged in this operation from 40 to 60 minutes and about one-fifth of that time would be spent near the perimeter. Exposure near the perimeter, not nearer than 30 inches, averages

between eight and twelve minutes per technician every two weeks.

The pasteurizers are not equipped with perimeter guardrails and no other equivalent protection is provided to guard against falls from the perimeter.

No employee, required to ascend to the top of a pasteurizer to perform those tasks, as set forth above, operates production machinery or equipment of any kind whatsoever.

During the 11 or 12 years this facility of respondent's at Jacksonville, Florida, has been in operation, no employee has ever fallen from the perimeter of any pasteurizer.

### Law And Opinion

In this case, complainant structured his citation conforming in part to the law as pronounced by the United States Court of Appeals for the Second Circuit in *General Electric Company v. Occupational Safety and Health Review Commission*, 583 F.2d 61 (1978). This is evidenced by the fact that he confined his charge to employees required to be present on the pasteurizer "on a routine predictable and scheduled basis" for inspection purposes. That, of course, refers to the laboratory technicians but ignors [sic] the fact that the Second Circuit confined the elevated working space to one designed primarily for the operation of machinery and equipment.

This case arises within the jurisdiction of the United States Court of Appeals for the Fifth Circuit, thus, the Review Commission is not bound to follow the law of the Second Circuit as laid down in *General Electric Company v. OSHRC, supra*.

At this point in time a consensus among the commissioners does not exist with respect to a clear and unified interpertation [sic] of the true meaning of the complainant's codified definition of "platform." That definition is:

"A working space for persons, elevated above the surrounding floor or ground,

---

1. Perimeter is used by the ALJ to describe the outer edges of the top surface of the pasteurizers. This footnote is added to the quotation of the "Decision and Order" of the ALJ.

such as a balcony or platform for the operation of machinery and equipment." (29 C.F.R. 1910.21(a)(4)).

Complainant argues that the Second Circuit's interpretation of complainant's definition of "platform" is restrictive only to a worker's presence on a flat surface merely for the performance of infrequent maintenance functions. That argument is based upon a footnote to that decision (pages 66 and 67, note 9). Complainant has misread that footnote. That footnote is attached to the end of a lengthy discussion by that Court showing how surprisingly inconsistent and unpredictable the Commission, the Commission's Administrative Law Judges, and OSHA's compliance officers have been with regard to the definition of the term "platform." That court in that footnote merely stated that the cases in its text and those cited in that note served to demonstrate the confusion generated by the term "platform." Also, that those cases show only a single thread of continuity whenever a "platform" has been found to exist, which was where workers had been assigned to do work on that surface with some regularity and the nature of the work assigned had been central to the processes of the employer.

The Second Circuit by that footnote in no way departed from its interpretation of complainant's definition of the term "platform." In view of that definition, the court described its interpretation of § 1910.-23(c)(1) as reasonable and said it applies:

"Only to elevated working spaces, 4 feet or [more] above the ground level, which are designed primarily for the operation of machinery and equipment and which require employee presence on a predictable and regular basis; and not to spaces where only occasional maintenance or repair work is performed."

That court further said:

".... to depart from this interpretation of the standard is to venture into unreasonableness."

Complainant further argues that the surface of each pasteurizer is a machine in operation where employees monitor the operation and use equipment to make repairs. Complainant concedes that the pasteurizer is non-operating during repair work. During the monitoring [inspection of spray headers] the pasteurizing machinery, all of which is enclosed below the top or surface of the pasteurizer, is in automatic operation. No employee operates the pasteurizer when engaged in an activity on top of the pasteurizer, nor is he required to operate any machinery on that surface (Tr. 49). The only equipment used or operated on that surface was a bucket, mop, broom, a hook to lift lids, recording paper and pencil, mechanical tools and welding equipment for repairs, and aluminum logs. None of that equipment was permanently affixed to the surface of the pasteurizer nor was that surface, used to perform the work as described by the evidence, designed primarily for the operation of such equipment.

Obviously, had the Second Circuit in the *General Electric Company* case, *supra*, included in its interpretation of the application of the cited standard, "*any* work assigned to be performed on a platform with some regularity which in its nature is central to the process of producing [beer]," the case for complainant would be made. Should the Review Commission, however, elect to live with the rational [sic] of the court's interpretation of the cited standard, as set forth on page 65 of its decision and as quoted above, the opposite result would occur.

In this tribunal's view, the interpretation of the application of the cited standard, handed down by the Second Circuit, makes sense. If the fashioners of the standard intended that open sides of every conceivable elevated floor or platform [4 feet or more], where any kind of work is performed, be equipped with a standard railing, they would not have included the words of limitation in their definition of the term "platform."

Moreover, even if the theory of the single thread of continuity of the Commission decisions is followed, it can and probably would produce the same result which was appealed to the Second Circuit in the *Gen-*

eral Electric Company, case, supra. The point is that any or almost any work activity performed on an elevated surface could be adjudged central to the work processes of the employer.

Under that theory, assuming that mopping was the only work activity performed on the top of the pasteurizers, it could be argued in this case that mopping the top was central to the production of beer because of the necessity to keep the top sanitary in the pasteurizing process. To find that the tops of these pasteurizers were designed to receive and operate a bucket, a broom, and a mop would be ridiculous. The theory makes no case for the aluminum bars [logs] and the maintenance men and their equipment. With regard to the inspections, the tops were designed for access to the spray headers for repairs and maintenance. The handles on each lid provided ready access at a desired location. The handles attached to the lids as part of the top were not designed for the operation of the hooks used by the inspectors but rather the hooks were designed for easy lifting of the lids and save bending and stooping.

Circumventing the true meaning of the term "platform" as defined by the standard [29 C.F.R. 1910.21(a)(4)] only leads to endless ramifications in its application with preposterous results.

Moreover, this tribunal would observe that if the Secretary believes every open-sided floor or platform elevated four feet or more must be guarded by a standard railing, as required by the cited standard, then it is perfectly obvious that he should delete his definition of the term "platform" from the regulations.

The portion of the citation contested should be vacated. With that determination, the de minimis use raised by complainant is moot.

### Conclusions Of Law

1. The Review Commission has jurisdiction to hear and decide this case.

2. The cited standard [29 C.F.R. 1910.-23(c)(1)] applies only to elevated working spaces four feet or more above adjacent floor or ground level, which require employee presence for the operation of the machinery and equipment for which it was designed.

3. Respondent's pasteurizer tops, units 10, 20, 50, and 70 were not platforms [working spaces] within the meaning of complainant's definition of the term platform [29 C.F.R. 1910.21(a)(4)].

4. Under the facts and circumstances of record in this case, the cited standard does not apply to the surfaces [tops] of respondent's pasteurizers, units 10, 20, 50, and 70.

### Order

Citation 1 is vacated as to tops of pasteurizers; units 10, 20, 50, and 70.

No penalty is assessed.

### THE CONTENTIONS ON PETITION FOR REVIEW

Pursuant to the Act, 29 U.S.C. § 661(i), the Secretary petitioned the Commission requesting discretionary review of the "Decision and Order" of the ALJ. When no Commissioner directed review, the decision of the ALJ became the final order of the Commission on June 23, 1980 pursuant to the Act, 29 U.S.C. § 661(i).

Thereafter, the Secretary filed a petition in this Court seeking review of the final order of the Commission. The issue on review is the proper interpretation of 29 C.F.R. § 1910.23(c)(1) and its application to the top surfaces of the "can-line" pasteurizers as platforms.

The Secretary, petitioner, contends that the restrictive definition of "platform" by the ALJ is inconsistent with the objectives of 29 C.F.R. § 1910.23(c)(1) and the interpretation of 29 C.F.R. § 1910.23(c)(1) by the Secretary and the Commission, and that the Second Circuit opinion, General Electric Co. v. Occupational Safety and Health Review Commission, 583 F.2d 61 (C.A.2 1978), is distinguishable or, alternatively, should not be followed by this Court. (Brief of Petitioner 13, 16, 17–19).

In opposition, the respondent, Busch, contends that the interpretation of "platform"

by the ALJ is not inconsistent with the interpretation of "platform" by the Commission, and that the Second Circuit opinion, *General Electric Co., supra,* is not distinguishable and should not be rejected by this Court. (Brief of Respondent 10–11, 15–16, 17).

## I.

## ADMINISTRATIVE ENFORCEMENT, ADJUDICATION AND REVIEW PROCEDURES UNDER THE ACT

Because of the unusual division of administrative functions and powers among the Secretary, the Commission and the ALJ in promulgating and interpreting the Act and standards thereunder, and in enforcement proceedings under the Act, an analysis of the distribution of those functions and powers is necessary to a proper application of the legal rules of deference to administrative interpretations and decisions in the proceedings under review. *Cf. Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410 at 414, 65 S.Ct. 1215 at 1217, 89 L.Ed. 1700, at 1702 (1945). The usual provisions prescribed by the Administrative Procedure Act (APA) are not applicable to the Secretary in promulgating standards under the Act [29 U.S.C. §§ 655(a), 655(c)(1)] nor to the Commission in some respects [29 U.S.C. § 659(c)] providing for hearings in accordance with § 554, Title 5 of the APA but without regard to subsection (a)(3) of said § 554.

The Act, Chapter 15 of Title 29 U.S.C., is administered by the Secretary.[2] The Secretary promulgates standards under the Act (29 U.S.C. § 655; 29 C.F.R. Part 1911), and enforces the standards so promulgated in the following manner:

(a) An authorized agent of the Secretary, a Compliance Officer, inspects a place of employment and work conditions and reports thereon. 29 U.S.C. § 657; 29 C.F.R. § 1903.3(a). Another authorized agent of the Secretary, an Area Director of the Department of Labor (Area Director), reviews the report by the Compli-

ance Officer; issues either a citation or a notice of de minimis violation to the employer if the Area Director believes the employer has violated the Act or an implementing standard, rule or order; and includes in the citation the time for abatement of the violation, and may then also include the amount of any proposed penalty. 29 U.S.C. § 658, § 659(a); 29 C.F.R. §§ 1903.14, 1903.15. If the Area Director determines that an inspection or citation is not warranted, a complaining party may secure review of that determination by an Assistant Regional Director of the Department of Labor (Regional Director). 29 C.F.R. §§ 1903.12(a), 1903.-14(d). The Regional Director affirms the determination by the Area Director, or orders a reinspection, or issues a citation if he believes a violation has occurred. 29 C.F.R. § 1903.14(d). The determination by the Regional Director is final and is not subject to review. 29 C.F.R. § 1903.-14(d).

(b) If a citation is issued the employer may contest the citation (or any part thereof) the proposed penalty, or both. 29 U.S.C. § 659(a); 29 C.F.R. § 1903.17(a). If the citation or proposed penalty, or both, are not timely contested by the employer, each becomes the final order of the Commission and is not subject to judicial review. 29 U.S.C. § 659(a). Any employee or a representative of the employees may contest the time fixed in a citation for abatement of a violation. 29 U.S.C. § 659(c); 29 C.F.R. § 1903.17(b). Written notice of the intent to contest a citation, or any part thereof, by the employer or the employee is filed with the Area Director; the Area Director transmits such notice of contest to the Commission; and the Commission affords an opportunity for a hearing. 29 U.S.C. § 659(c); 29 C.F.R. § 1903.17.

The adjudicatory functions under the Act are carried out by the Commission. 29 U.S.C. § 651(b)(3). The Commission is composed of three members appointed by the

**2.** The Secretary is advised generally by the National Advisory Committee on Occupational Safety and Health. 29 U.S.C. § 656(a); 29 C.F.R. § 1912a.1(a).

President and confirmed by the Senate. 29 U.S.C. § 661(a). The adjudication process is as follows:

(a) When a citation or proposed penalty is contested by the employer, the Secretary files a complaint with the Commission; the employer files an answer; and a hearing is held before an ALJ (formerly a Hearing Examiner).[3] 29 U.S.C. § 661(i) as amended by Public Law 95–251 (1978); 29 C.F.R. § 2200.33. The ALJ is appointed by the Commission and is assigned by the Chairman of the Commission to conduct the hearing. 29 U.S.C. § 661(i). Upon completion of the hearing the ALJ files a report with the Executive Secretary of the Commission consisting of the decision by the ALJ, the record in support of the decision, any petitions for discretionary review before the Commission and any statements in opposition to the petitions for discretionary review.[4] 29 C.F.R. § 2200.90(a).

(b) A party aggrieved by the decision by the ALJ may petition for *discretionary* review by the Commission. 29 C.F.R. §§ 2200.91, 2200.92. If no member of the Commission directs review of the decision within 30 days, the decision of the ALJ becomes the final order of the Commission. 29 U.S.C. § 661(i); 29 C.F.R. § 2200.90(b)(3). *The Commission denied the petition of the Secretary for discretionary review of the decision of the ALJ in this case.*

(c) Any person "adversely affected or aggrieved" by the final order of the Commission [29 U.S.C. § 660(a)] or the Secretary [29 U.S.C. § 660(b)] can petition for review of the final order of the Commission in the United States Court of Appeals for the circuit in which the violation is alleged to have occurred or where the employer has its principal office. Under 29 U.S.C. § 660(b) the Secretary sought

review of the final order of the Commission in this case.

## II.

### THE SCOPE OF JUDICIAL REVIEW

■ When reviewing a final order by the Commission, this Court recognizes a distinction between judicial review of factual and legal issues. 29 U.S.C. § 660(a) and 5 U.S.C. § 706 applied in *Marshall v. Knutson Construction Co.*, 566 F.2d 596, at 600 (C.A. 8 1977); *Brennan v. Occupational Safety and Health Review Commission*, 487 F.2d 438, at 442 (C.A. 8 1973).

The Act, 29 U.S.C. § 660(a), provides that the "findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive." *Diversified Industries Division, Independent Stave Co. v. Occupational Safety and Health Review Commission*, 618 F.2d 30, at 32 (C.A. 8 1980); *National Industrial Constructors, Inc. v. Occupational Safety and Health Review Commission*, 583 F.2d 1048, at 1054 (C.A. 8 1978).

■ While the standard of judicial review of legal issues is not expressly set forth in the Act, the review of legal issues is governed by the APA, 5 U.S.C. § 706. *Marshall v. Knutson Construction Co., supra*, 566 F.2d at 600 (C.A. 8 1977); *Dunlop v. Rockwell International*, 540 F.2d 1283, at 1288 (C.A. 6 1976).

Because there is no substantial factual issue before this Court, the order by the ALJ is subject to the standard of review set forth in the APA, 5 U.S.C. § 706, which provides in part as follows:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provi-

---

**3.** When an employee contests the time for abatement, the Secretary files with the Commission a "clear and concise statement of the reasons the abatement period prescribed by him is not unreasonable"; the contestant files a response and an expedited proceeding is held before an ALJ. 29 C.F.R. §§ 2200.35, 2200.101.

**4.** Subpart M of Chapter XX of Title 29 C.F.R., not applicable here, 29 C.F.R. §§ 2200.200–2200.211 inclusive, provides for simplified procedures that are available in contests under the Act that are eligible under 29 C.F.R. §§ 2200.-201, 2200.202 for simplified proceedings.

sions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall . . .

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . .

■ We are mindful of the rule that an interpretation by the Commission of a standard under the Act is entitled to deference by a reviewing court if it is reasonable and consistent with the purposes of the Act. *Bratton Corp. v. Occupational Safety and Health Review Commission,* 590 F.2d 273, at 276 (C.A. 8 1979); *Marshall v. Knutson Construction Co., supra,* 566 F.2d at 600 (C.A. 8 1977). *Cf. Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410 at 414, 65 S.Ct. 1215 at 1217, 89 L.Ed. 1700, at 1702 (1945); 2 Davis, *Administrative Law Treatise* (2d ed.), § 7:22, 105–108. And we are aware that, in this Circuit, when the Secretary and Commission differ with respect to the interpretation of a standard promulgated by the Secretary, the interpretation by the Commission, and not that of the Secretary, is usually entitled to deference. *Brennan v. Occupational Safety and Health Review Commission,* 513 F.2d 713, at 715 (C.A. 8 1975).

The rule that a Commission interpretation of a standard under the Act is entitled to deference by a reviewing court makes sense when the interpretation by the Secretary and the Commission, two administrative bodies having expertise, is the same. *Clarkson Construction Co. v. Occupational Safety and Health Review Commission,* 531 F.2d 451, at 457 (C.A. 10 1976). However, when the Commission and Secretary differ with respect to an interpretation of a standard under the Act, the unusual statutory allocation of the rule making power of the Secretary and the adjudicatory function of the Commission has led to differing judicial conclusions with respect to which interpretation should be given deference. *Brennan v. Gilles & Cotting, Inc.,* 504 F.2d 1255, at 1261–1262 (C.A. 4 1974), in which a statutory interpretation of the Commission was given deference; *Marshall v. Western Electric, Inc.,* 565 F.2d 240, at 244 (C.A. 2 1977), granting deference to the interpretation of the Secretary when the interpretation of the Commission is inconsistent with unequivocal language of the regulation; *Brennan v. Southern Contractors Service,* 492 F.2d 498, at 501 (C.A. 5 1974), holding that the interpretation of the Secretary, conflicting with that of the Commission, is controlling; and *Marshall v. Southwestern Industrial Contractors and Riggers, Inc.,* 576 F.2d 42, at 44–45 (C.A. 5 1978), holding that deference be given to the conflicting interpretation of the Secretary, if reasonable. This Court has held, "The Secretary may recommend an interpretation of a regulation to the Commission, but his recommendation does not necessarily control the Commission's conclusion." *Brennan v. Occupational Safety and Health Review Commission,* 513 F.2d 713, at 715 (C.A. 8 1975), according deference to the interpretation of the Commission, on discretionary review, if reasonable.

■ We conclude, however, that the usual rule of deference in this Court to an administrative interpretation by the Commission is not applicable on this petition for review for reasons stated hereinafter.

■ The interpretation of the term "platform" as used in 29 C.F.R. § 1910.23(c)(1) by the Commission, the ALJs of the Commission and the Compliance Officers of the Secretary has been conflicting and inconsistent. *General Electric Co. v. Occupational Safety and Health Review Commission, supra,* 583 F.2d at 65 (C.A. 2 1978), and cases therein cited. When an authoritative administrative interpretation by either the Commission or the Secretary is not available to assist the court because the interpretations are inconsistent, the reviewing court need not defer to any of the interpretations. *General Electric Co. v. Gilbert,* 429 U.S. 125, at 140–143, 97 S.Ct. 401, at 410–411, 50 L.Ed.2d 343, at 357–358 (1976) *rehearing denied,* 429 U.S. 1079, 97 S.Ct. 825, 50 L.Ed.2d 800 (1977); *Bethlehem Steel Corp. v. Occupational Safety and Health Review Commission,* 573 F.2d 157, at 160 (C.A. 3

1978); *Westinghouse Electric Corp. v. Occupational Safety and Health Review Commission*, 617 F.2d 497, at 501 (C.A. 7 1980); *General Electric Co. v. Occupational Safety and Health Review Commission, supra*, 583 F.2d at 65 (C.A. 2 1978).

■ Further, the interpretation by the ALJ is not entitled to deference when, as in this case, the decision by the ALJ is not reviewed by the Commission. When a decision by an ALJ is, in effect, unreviewed by the Commission, it does not constitute binding precedent upon the Commission and does not "necessarily [express] the views of the Commissioners, or [declare] Commission policy." *Willamette Iron and Steel Co. v. Secretary of Labor*, 604 F.2d 1177, at 1180 (C.A. 9 1979) *cert. denied*, 445 U.S. 942, 100 S.Ct. 1337, 63 L.Ed.2d 776 (1980); *RMI Co. v. Secretary of Labor*, 594 F.2d 566, at 571 n.13 (C.A. 6 1979).

■ Furthermore, the ALJ in his "Decision and Order" did not interpret the underlying applicable standard, but interpreted the opinion of the Second Circuit Court of Appeals in *General Electric Co. v. Occupational Safety and Health Review Commission, supra*, 583 F.2d 61 (C.A. 2 1978) and applied his interpretation thereof. So, in this case the rule that accords judicial deference to an agency interpretation does not apply to the interpretation by the ALJ of a judicial precedent. *Maine Public Service Co. v. Federal Power Commission*, 579 F.2d 659, at 665 (C.A. 1 1978), and cases therein cited; *H. W. Wilson Co. v. United States Postal Service*, 580 F.2d 33, at 37 (C.A. 2 1978).

While construing a standard promulgated under the Act, the reviewing court may interpret the standard directly. "[D]eference is constrained by our obligation to honor the clear meaning of a [standard], as revealed by its language, purpose, and history." *International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Daniel*, 439 U.S. 551 at 566 n.20, 99 S.Ct. 790 at 800 n.20, 58 L.Ed.2d 808 at 820 n.20 (1979). Even a consistent administrative interpretation, while entitled to deference, is not binding on the Courts. *Cf.*

*United States v. National Association of Securities Dealers, Inc.*, 422 U.S. 694, at 719, 95 S.Ct. 2427, at 2442, 45 L.Ed.2d 486, at 504 (1975); *Zuber v. Allen*, 396 U.S. 168, at 192, 90 S.Ct. 314, at 327, 24 L.Ed.2d 345, at 360 (1969).

## III.

## THE INTERPRETATION OF THE DEFINITION OF PLATFORM

Having concluded that the interpretation by the ALJ of the applicable standards is not entitled to deference, we turn to the proper interpretation of the term "platform".

"Platform" as used in 29 C.F.R. § 1910.23(c)(1) is defined as "[a] working space for persons, elevated above the surrounding floor or ground; *such as* a balcony or platform for the operation of machinery and equipment." (Emphasis added.) 29 C.F.R. § 1910.21(a)(4). Relying on the interpretation by the Second Circuit Court of Appeals of these standards in *General Electric Co. v. Occupational Safety and Health Review Commission, supra*, 583 F.2d 61 (C.A. 2 1978), the ALJ in his "Conclusions of Law" concluded that 29 C.F.R. § 1910.23(c)(1) applies "only to elevated working spaces four feet or more above adjacent floor or ground level, which require employee presence for the operation of machinery and equipment for which it was designed."

We conclude that this interpretation of the applicable standards is erroneous, and we decline to follow the interpretation of the definition of "platform" adopted by the ALJ in his interpretation of the Second Circuit opinion, *General Electric Co. v. Occupational Safety and Health Review Commission, supra*, 583 F.2d 61 (C.A. 2 1978).

■ Standards under the Act "should be given a reasonable, commonsense interpretation." *National Industrial Constructors, Inc. v. Occupational Safety and Health Review Commission*, 583 F.2d 1048, at 1055 (C.A. 8 1978). We conclude that the phrase "such as a balcony or platform for the operation of machinery and equipment", when

given a reasonable and commonsense interpretation, does not constitute words of limitation restricting the definition of "platform", but is an example or illustration to the nature and quality of structures included in the general definition of "platform".

█ The phrase "such as" is not a phrase of strict limitation, but is a phrase of general similitude indicating that there are includable other matters of the same kind which are not specifically enumerated by the standard. Cases collected in 40A *Words and Phrases*, under "such as", at 50–51.

An interpretation that the phrase "such as" is not a phrase of strict limitation is supported by several authoritative dictionaries which among other definitions have defined the phrase "such as" as meaning "for example" or "of the kind specified". *The American Heritage Dictionary of the English Language* (1969 ed.), at 1285; *The Random House Dictionary of the English Language* (1967 ed.), at 1420; *Webster's Third New International Dictionary* (1971 ed.), at 2283, under "¹ such" 1 a; *The Compact Edition of the Oxford English Dictionary* (1971 ed.), Volume II, at 3136; *Webster's New World Dictionary of the American Language* (2nd college ed.), at 1422.

█ We are aware of the maxims of statutory construction, (1) *noscitur a sociis* (the meaning of one term or phrase may be determined by reference to their association with other words or phrases) and (2) *ejusdem generis* (where specific words follow general words, the specific words restrict application of the general term to things that are similar to those enumerated). The application of these maxims both cited by the Second Circuit Court of Appeals in its analysis of 29 C.F.R. § 1910.21(a)(4), are not controlling or conclusive. These maxims are only aids to judicial interpretation, and they will not be applied when there is no ambiguity, to defeat the legislative intent and purpose, to make general words meaningless, or to reach a conclusion inconsistent with other rules of construction. 2A Sands, *Sutherland Statutory Construction* (4th ed.), §§ 47.16–47.22, at 101–123; The Annotation: *Supreme Court's Application of the Rules of Ejusdem Generis and Noscitur a Sociis*, in 46 L.Ed.2d 879.

We conclude that the standard, 29 C.F.R. § 1910.21(a)(4) defines a "platform" as a "working space for persons, elevated above the surrounding floor or ground" and then provides an example to this definition. If the definition was intended to be limited to the example the general phrase would not have been used.

This conclusion stated above is consistent with the purpose of the Act to "assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. § 651(b). As stated by the Supreme Court of the United States in *Whirlpool Corp. v. Marshall*, 445 U.S. 1, at 12, 100 S.Ct. 883, at 890, 63 L.Ed.2d 154, at 164 (1980):

> To accomplish this basic purpose, the legislation's remedial orientation is prophylactic in nature.... The Act does not wait for an employee to die or become injured. It authorizes the promulgation of health and safety standards and the issuance of citations in the hope that these will act to prevent deaths or injuries from ever occurring.

"The Act is intended to prevent the first injury, including those of a non-serious nature", and while economic considerations are relevant, "[t]he legislative decision has been made to protect the health of employees even though increased production costs may result." *Arkansas-Best Freight Systems, Inc. v. Occupational Safety and Health Review Commission*, 529 F.2d 649, at 653–654 (C.A. 8 1976).

These purposes are not achieved by the restrictive interpretation of "platform" by the ALJ. The protection required by 29 C.F.R. § 1910.23(c)(1) should extend to those elevated surfaces where employees work and which in the reasonable judgment of the Secretary need protection from injury by guardrails.

In sum, the interpretation of the plain meaning of the definition by the Secretary responsible for the promulgation, amendment and enforcement of the standard is reasonable and preferable.

Further, the facts in this case differ materially from those in *General Electric Co. v. Occupational Safety and Health Review Commission, supra,* 583 F.2d 61 (C.A. 2 1978), and come within the definition of "platform" set forth in that case. In the *General Electric* case, *supra,* the contested elevated surface was the top surface of a "dip and bake" oven where employees performed occasional maintenance on two circulation and exhaust motors. *General Electric Co. v. Occupational Safety and Health Review Commission, supra,* 583 F.2d at 62 (C.A. 2 1978). In this case, the periodic inspection and maintenance of the "spray-headers", the placement, movement and removal of the aluminum "logs" and the cleaning of the top surfaces of the "can-line" pasteurizers required employee presence on the top surfaces of the "can-line" pasteurizers on a predictable and regular basis. The functions were all necessary to the efficient operation of the "can-line" pasteurizer machinery and equipment.

For the foregoing reasons, the Order of the ALJ, discretionary review of which was denied by the Commission, is reversed and the citation is affirmed in respect to the enumerated "can-line" pasteurizers. The enforcement proceedings are remanded to the Commission for further proceedings consistent with this opinion.

### On Petition For Rehearing

Respondent Anheuser-Busch, Inc. has filed a timely petition for rehearing on only one point, as follows:

The Court overlooked the factual finding of the ALJ that the use of the can-line pasteurizers was *de minimis,* and though the Court reversed the ALJ's ruling and affirmed the citation, the citation should have been affirmed as *de minimis.*

This point is without merit and the petition for rehearing will be denied for the following reasons:

1. The ALJ did not find that the use of the can-line pasteurizers was *de minimis* as shown by the following quoted portion of his Decision and Order. After his conclusion that the contested citation should be vacated, the ALJ stated that "... the *de minimis* use raised by complainant is moot." This was also the final order of the Commission on the issue, in the absence of discretionary review by the Commission. *Cf.* 29 U.S.C. § 661(i) as amended by Public Law 95–251 (1978). Only the respondent Anheuser-Busch contended that the violation was *de minimis,* which contention was placed in issue by the Secretary. The alleged "factual findings" relied on by respondent Anheuser-Busch, Inc. were not a finding that the contested violation was *de minimis.*

2. In issuing the original citation pursuant to 29 U.S.C. § 658(a) without choosing to find pursuant to 29 U.S.C. §§ 666(c) and 666(j) that the "violation was not of a serious nature" the Area Director for the Secretary did not find that the violation was *de minimis,* even though no penalty was proposed. *Cf.* 29 C.F.R. § 1903.14 and § 1903.15; 29 U.S.C. § 658(a). Therefore this Court cannot affirm a finding that was not made.

3. The Commission, as distinguished from the ALJ, did not make a finding on the issue of the *de minimis* nature of the violation.

4. This Court does not have the power in this petition for review to find as an initial matter that the violation was *de minimis* as requested in the petition for rehearing. 29 U.S.C. § 660(a) applied in *RMI Co. v. Secretary of Labor et al.,* 594 F.2d 566 at 574 (C.A. 6 1979).

Finally, it is clear in the order of remand that the Commission, and the ALJ if the Commission remands the hearing to the ALJ, may proceed to make initial findings on the issue whether the violation exposure is *de minimis* as defined in the statute and standards, *supra.*

For the foregoing reasons, the petition for rehearing is denied.