MELLOY, Circuit Judge.
The Secretary of the Department of Labor petitions for review of an order of the Occupational Safety & Health Review Commission. In the order, the Commission approved without comment an underlying Administrative Law Judge’s decision that addressed competing interpretations of a Department of Labor safety regulation, 29 C.F.R. § 1910.212(a)(1). The ALJ rejected the Secretary’s interpretation of the regulation, found the regulation inapplicable to the present facts, and declined to address several other issues raised in an administrative hearing. Because we conclude the Secretary’s interpretation of the regulation is reasonable, and because controlling Supreme Court precedent requires deference to the Secretary when the Secretary and the Commission adopt competing reasonable interpretations, we grant the petition for review.
I. Background
Loren Cook Company (“Loren Cook”) is a manufacturer of air circulating equipment. In the manufacturing process, Loren Cook uses lathes to shape metal discs— workpieces — into parts. The lathes each hold a workpiece that is heavily lubricated and rotates rapidly as a worker applies tools to bend and shape the spinning workpiece. Lathes of different sizes are used to form workpieces of different sizes. Large lathes employ barrier guards to protect workers from ejected objects. In the past, small lathes also had employed such guards. By May 2009, however, the guards had been removed from the small lathes. At that time, a twelve-pound workpiece being tooled in a small lathe broke loose, shot out, and struck a lathe operator in the head, killing him. Although the parties dispute the frequency with which similar ejections of workpieces occurred in the past, it is undisputed that prior workpiece ejections had occurred. For example, approximately two weeks prior to the incident that killed the worker, a workpiece had been ejected from a small lathe, narrowly missing a worker twenty feet away.[1]
After the fatal accident, the Secretary performed an investigation and charged Loren Cook with violations of multiple regulations. The Secretary eventually *1008 dropped some charges, but found seven violations of 29 C.F.R. § 1910.212(a)(1). The Secretary determined that the regulation requires lathes such as those used by Loren Cook to have guards to protect workers from ejected workpieces. The Secretary assessed a fine of $70,000 per violation, resulting in a total fine of $490,000.
Loren Cook sought review, and the ALJ held a twenty-day hearing that resulted in an extensive record. The ALJ concluded that § 1910.212(a)(1) did not apply in the context of the present case. According to the ALJ, the regulation at issue only required guards on the lathes to prevent debris or waste material from being ejected; it did not apply to guard against the ejection of the actual item being worked on, i.e., the ejection of the actual workpiece. As a result of this threshold determination, the ALJ elected not to reach several other elements of the charge and defenses to the charge, stating, “it is not necessary to address several of the issues raised at the hearing, including the feasibility of abatement, fair notice, credibility of experts, willful classification, and collateral estoppel.” Finally, the ALJ denied any pending motions not previously ruled on, presumably as moot, in light of the ALJ’s holding. The Commission declined further review, and the ALJ’s decision became a final order of the Commission. The Secretary petitions our court for review of the Commission’s final order pursuant to 29 U.S.C. § 660(b).
II. Discussion
A. Standard of Review
Normally, our review of a petition from a Commission order would be standard deferential review pursuant to the Administrative Procedures Act. See Omaha Paper Stock Co. v. Sec’y of Labor, 304 F.3d 779, 782 (8th Cir.2002) (“We will uphold the Commission’s legal conclusions unless they are ‘arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.’ ”) (quoting 5 U.S.C. § 706(2)(A)). Here, however, the Secretary appeals as to a question of regulatory interpretation upon which the Secretary and the Commission have adopted competing positions. We address in detail below why we believe that the Secretary’s interpretation of the regulation in this matter is reasonable and well supported by the plain meaning of the regulation’s text. Further, we assume for the purpose of our analysis that the Commission’s interpretation also is reasonable. In this situation, where the Secretary and the Commission advocate competing reasonable interpretations of the same regulation, the question we must address is whether to accord deference to the Secretary or the Commission.
Pursuant to Martin v. Occupational Safety & Health Review Commission, 499 U.S. 144, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991), which involved this exact question, we must defer to the Secretary. See Solis v. Summit Contractors, Inc., 558 F.3d 815, 823-25 (8th Cir.2009) (applying Martin). In Martin, the Court resolved a circuit split and held that “a reviewing court may not prefer the reasonable interpretations of the Commission to the reasonable interpretations of the Secretary!.]” 499 U.S. at 158, 111 S.Ct. 1171. In reaching this conclusion, the Court addressed Congressional intent in depth and examined the specific statutory division of adjudicatory and policymaking authority between the Commission and the Secretary. Id. at 151-54, 111 S.Ct. 1171. The Court emphasized that the Occupational Safety and Health Act (“OSHA”) did not create a typical unitary administrative agency, but that the Commission and Secretary represented a separation of neutral, adjudicatory functions, on the one hand, from enforcement and policymaking functions, on the other. Id. at 152, 154, 111 S.Ct. 1171. *1009 The Court concluded unequivocally that deference in the interpretation of regulations was owed to the Secretary rather than the Commission, stating:
[T]he Commission is authorized to review the Secretary’s interpretations only for consistency with the regulatory language and for reasonableness. In addition, ... Congress expressly charged the Commission with making authoritative findings of fact and with applying the Secretary’s standards to those facts in making a decision. See 29 U.S.C. § 660(a) (Commission’s factual findings “shall be conclusive” so long as “supported by substantial evidence”). The Commission need be viewed as possessing no more power than this in order to perform its statutory role as “neutral arbiter.”
Id. at 154-55, 111 S.Ct. 1171.
Martin remains good law, although several courts have recognized the limited scope of Martin’s holding. For example, courts have refused to apply Martin in cases involving different agencies. See, e.g., Hinson v. Nat’l Transp. Safety Bd., 57 F.3d 1144, 1148 n. 2 (D.C.Cir.1995) (recognizing the narrow applicability of Martin and refusing to apply Martin in a case involving competing interpretations from the Federal Aviation Administration and the National Transportation Safety Board). And courts have determined that Martin was not controlling as to questions of statutory interpretation. See, e.g., Chao v. Occ. Safety & Health Rev. Comm’n, 540 F.3d 519, 525 (6th Cir.2008) (“Left undecided by Martin, however, is to whom does a reviewing court defer when the Secretary and Commission offer conflicting interpretations of a provision of [OSHA].”). These refusals by other courts to expand Martin do not undercut Martin’s holding because the Supreme Court in Martin defined the issue narrowly and did not purport to issue a broad ruling that might apply in other contexts or to other agencies. Martin, 499 U.S. at 157, 111 S.Ct. 1171 (“We emphasize the narrowness of our holding. We deal in this case only with the division of powers between the Secretary and the Commission under the OSH Act.”). In fact, the nature of the issue raised in Martin was such that courts would not expect Martin to find application except in this very specific context: Martin rested on the careful division of authority Congress set out for the Secretary and the Commission, and that division of authority likely will vary from agency to agency and statute to statute.
Our review in this matter therefore requires that we address the Secretary’s interpretation of § 1910.212(a)(1) to determine whether it is a reasonable and textually supported interpretation that merits deference pursuant to Martin in the face of a competing and inconsistent interpretation by the Commission.
B. Interpretation of 29 C.F.R. § 1910.212(a)(1)
The regulation at issue in this case provides:
Types of guarding. One or more methods of machine guarding shall be provided to protect the operator and other employees in the machine area from hazards such as those created by point of operation, ingoing nip points, rotating parts, flying chips and sparks. Examples of guarding methods are-barrier guards, two-hand tripping devices, electronic safety devices, etc.
29 C.F.R. § 1910.212(a)(1).
The ALJ held that “hazards such as those created by point of operation, ingoing nip points, rotating parts, flying chips and sparks” applied only to hazards in the form of ejected debris and not ejected workpieces. The ALJ also stated that the regulation applied only to machines in the normal course of operation and that ejec *1010 tion of an actual workpiece could only occur in the event of a malfunction such that the regulation should not apply. The Secretary argues this same language, in particular, the language “hazards such as those created by ... rotating parts,” contains no inherent limitation to protections only against ejected debris rather than workpieces and no inherent limitation to situations involving normal machine operation rather than machine malfunctions.
In reviewing these conflicting interpretations of the regulation, we are mindful that “[a]ny interpretation of [an OSHA regulation] generally should conform to the accepted rules of grammar.” Solis, 558 F.3d at 823-24. As such, we believe that the Secretary’s argument is well supported. As an initial matter, the list “point of operation, ingoing nip points, rotating parts, flying chips and sparks” is preceded by the phrase “hazards such as those created by[.]” Because the phrase preceding the list uses the term “created by,” it is wholly reasonable to interpret the list as items or conditions that cause the hazards, rather than treating the list as a narrow and limited enumeration of actual hazards. When meaning is accorded to the phrase “created by,” it becomes apparent that the potential class of hazards covered by the regulation necessarily is larger than the enumerated causes. Each cause for a hazard could give rise to several different actual hazards.
Second, because the phrase preceding the list uses the term “such as” we conclude it is reasonable to construe the list as exemplary and not exhaustive. Orion Fin. Corp. of S.D. v. Am. Foods Grp., Inc., 281 F.3d 733, 739 (8th Cir.2002) (“An objective reader would interpret the phrase ‘such as’ to mean ‘for example.’ ”); Donovan v. Anheuser-Busch, Inc., 666 F.2d 315, 327 (8th Cir.1981) (“The phrase ‘such as’ is not a phrase of strict limitation, but is a phrase of general similitude indicating that there are includable other matters of the same kind which are not specifically enumerated by the standard.”). In contrast, we find little in the way of textual support for the ALJ’s position that “hazards ... created by ... rotating parts” are only covered if the hazards at issue take the form of the specifically enumerated categories of “flying chips” and “sparks.” Rather, it is reasonable to believe that the phrase “hazards ... created by ... rotating parts” refers to one category of covered hazard and that the phrase “hazards ... created by ... flying chips and sparks” refers to additional categories of covered hazards. Further, use of the phrase “such as” to set forth a non-exhaustive, exemplary list means it is reasonable to interpret the regulation as also encompassing additional categories of hazards created by other similar, but non-enumerated, types of causes. See Donovan, 666 F.2d at 327 (concluding that use of the phrase “such as” required the court to interpret an OSHA standard as reaching beyond the enumerated items to cover other, similar items “of the kind specified”).
Third, the regulation itself defines “point of operation” as “the area on a machine where work is actually performed upon the material being processed.” 29 C.F.R. § 1910.212(a)(3)(I). The lathes at issue have several rotating parts, and the workpiece itself rotates in tandem with those parts when affixed to the machine — such is the essence of a lathe. Accordingly, under two grammatically simple and clear routes, the danger associated with a workpiece being ejected from the lathe is a “hazard[ ] such as [that] created by point of operation [or] rotating parts.... ”
Finally, the use of the expansive language “such as” to indicate an exemplary rather than an exhaustive list comports with the undisputed purpose of the regula *1011 tion: “[T]o ‘assure so far as possible every working man and woman in the Nation safe and healthful working conditions.’” Donovan, 666 F.2d at 327 (quoting 29 U.S.C. § 651(b)); Arkansas-Best Freight Sys., Inc. v. Occ. Safety & Health Rev. Comm’n, 529 F.2d 649, 653-54 (8th Cir.1976) (“The legislative decision has been made to protect the health of employees even though increased production costs may result.”). The court in Donovan concluded that a “restrictive” interpretation of a term in an OSHA regulation would not be consistent with the broad and protective statutory purpose but that the regulatory interpretation “should extend to those [situations] which in the reasonable judgment of the Secretary need protection from injury by guardrails.” Donovan, 666 F.2d at 327. While this broad statement of purpose is by no means conclusive, the consistency between this broad purpose and the plain text as urged by the Secretary further demonstrates the reasonableness of the Secretary’s interpretation.
To reach the opposite conclusion, the ALJ relied upon a Second Circuit opinion interpreting the regulation, Carlyle Compressor Co. v. Occupational Safety & Health Review Commission, 683 F.2d 673 (2d Cir.1982). Loren Cook urges our court to follow Carlyle Compressor. In Carlyle, the Second Circuit addressed a similar situation involving a machine that held and rapidly rotated a shaft so that the shaft could be subjected to grinding. Id. at 674. There, the court interpreted the language of the regulation narrowly, found the regulation inapplicable to a thrown workpiece, and recognized a distinction between “normal projectiles” and “abnormal projectiles.” Id. at 675 (“[T]he ALJ apparently interpreted ‘flying chips’ to include shafts thrown by the machine.... [But] [h]ere, the standard is directed at the hazards attendant upon the wastage created by more normal projectiles such as flying chips and sparks, rather than abnormal projectiles such as flying workpieces.” (emphasis added)). For the reasons already stated, we do not believe this narrow interpretation is justified by the regulation’s text. Further, to the extent Carlyle rested upon a distinction between normal operations and machine malfunctions, that distinction similarly enjoys no support in the regulatory text.
Even if we were to find the Carlyle analysis compelling, we note that the Second Circuit went on to find a violation of a more general duty to provide a safe working environment. Id. at 677-78. Accordingly, even though the Second Circuit interpreted § 1910.212(a)(1) in the manner adopted by the Commission in the present case, the Second Circuit ultimately found a duty to guard against thrown workpieces. As such, it may be inappropriate to rely too heavily on the Second Circuit’s interpretation of § 1910.212(a)(1) in light of the fact that the court in that case actually agreed with the Secretary that the employer had, in fact, violated a duty to protect workers from thrown rotating shafts or workpieces. Id.
In further support of its position, Loren Cook offers a fair amount of briefing directed towards the absence of prior rulings specifically advancing the Secretary’s current position. According to Loren Cook, the Secretary has acquiesced in the Carlyle interpretation for decades such that any other interpretation must be deemed per se unreasonable or must be promulgated through a rulemaking process rather through an enforcement action. In fact, in Martin, the Supreme Court acknowledged that consistent application of an interpretation is “a factor bearing on the reasonableness of the Secretary’s position.” Martin, 499 U.S. at 157, 111 S.Ct. 1171. The Court also stated, however, that, “the Secretary’s interpretation is not undeserving of deference merely because the Secre *1012 tary advances it for the first time in an administrative adjudication[, but] the decision to use a citation as the initial means for announcing a particular interpretation may bear on the adequacy of notice to regulated parties.” Id. at 158, 111 S.Ct. 1171.
If the Secretary’s purportedly new interpretation in this case were somehow extra-textual or strained, we might agree with Loren Cook and the Commission. As set forth at length above, however, it is not. The Secretary’s interpretation comports with the plain language of the statute, gives effect to the language “created by,” and interprets the phrase “such as” according to our normal construction of language setting forth exemplary lists. Therefore, we take the Supreme Court at its word and view consistency as “a factor” rather than — as Loren Cook advocates — a controlling factor or the only factor in assessing the reasonableness of an interpretation. In other words, even assuming Loren Cook had convincingly demonstrated the Secretary’s long-term acquiescence in the Carlyle interpretation, the Secretary’s present advocacy of a different interpretation is not impermissible or per se unreasonable, although it may “bear on the adequacy of notice to regulated parties.” Id.
The analysis in Martin itself makes clear that the Secretary’s understanding of the effect of an interpretation may develop over time given the Secretary’s involvement with many more enforcement actions than the Commission.[2] The Court identified this fact as one of the Secretary’s “structural advantages” over the Commission in the interpretation of regulations. Id. at 152, 111 S.Ct. 1171. Because the Court anticipated that the Secretary may adjust its interpretation of a regulation over time, we cannot use the need for consistency to deny the Secretary this flexibility. Rather, like the Court, we believe that a general review for reasonableness and for adherence to regulatory language is sufficient to ensure that parties are not subjected to biased or abusive interpretations. Id. at 156, 111 S.Ct. 1171 (“Congress also intended to protect regulated parties from biased interpretations of the Secretary’s regulations. But this objective is achieved when the Commission, and ultimately the court of appeals, review the Secretary’s interpretation to assure that it is consistent with the regulatory language and is otherwise reasonable.”).
In conclusion, we find nothing about Carlyle or the Secretary’s past enforcement of the regulation sufficient to demonstrate that the Secretary’s current, plain language interpretation is unreasonable. As such, we must defer to the Secretary rather than the Commission.
C. Issues Not Addressed by the ALJ
To extent Loren Cook uses these same arguments to characterize the Secretary’s imposition of a fine in this case as unfair due to an absence of adequate notice regarding a “new” interpretation, we are not unsympathetic to Loren Cook’s view. For the purpose of the present appeal, however, we believe Loren Cook misses the point. The majority of the issues raised below and addressed through twenty days of testimony before the ALJ have yet to be *1013 decided. The ALJ found the regulation inapplicable and stopped the analysis. Loren Cook may well be correct that the Secretary’s current interpretation, although textually supported, represents a change of position for the Secretary sufficient in scope to have deprived Loren Cook of the notice necessary to justify a fine of $490,000. Even if Loren Cook is correct that the Secretary’s current interpretation reflects this type of change of position, however, and even if Loren Cook ultimately shows that a fine based on that change may be unfair, Loren Cook is wrong to suggest that a change of regulatory interpretation by the Secretary must be viewed as per se unreasonable. A steep fine for behavior consistent with an arguably longstanding interpretation from the Secretary may well be untenable. That does not mean, however, that the Secretary is barred from issuing a reasonable interpretation of a regulation to protect workers in the future. Martin, 499 U.S. at 157, 111 S.Ct. 1171.
Finally, to the extent the parties direct their arguments to additional fact-intensive issues such as the technical feasibility of guards and specific past enforcement practices, none of this fact-intensive briefing matters for resolution of the narrow issues presented in this appeal.
III. Conclusion
We grant the petition for review, reverse the order of the Commission, and remand for further proceedings consistent with this opinion.

. After the May 2009 accident that killed a worker, at least one lathe operator reattached a guard to his small lathe. A Loren Cook supervisor questioned the operator about the guard and later removed it. This guard, and other guards that previously had been used on small lathes, were purportedly removed for inspection. The guards, however, could not be located when demanded by the Secretary in this matter. The Secretary moved for sanctions alleging spoliation of evidence. The ALJ denied the motion, but stated he was "troubled by the disappearance of the guards.”

. The Court in Martin stated:
by virtue of the Secretary’s statutory role as enforcer, the Secretary comes into contact with a much greater number of regulatory problems than does the Commission, which encounters only those regulatory episodes resulting in contested citations. Consequently, the Secretary is more likely to develop the expertise relevant to assessing the effect of a particular regulatoiy interpretation.
499 U.S. at 152-53, 111 S.Ct. 1171 (internal citation omitted) (emphasis added).